UNITED STATES, Appellee

v

STANLEY T. DAVIS, Basic Airman, and WARREN L. WATSON, Basic Airman, U. S. Air Force, Appellants

10 USCMA 624, 28 CMR 190

No. 12,841

Decided August 28, 1959

*Lieutenant Colonel Philip J. Williamson* argued the cause for Appellants, Accused. With him on the brief were *Lieutenant Colonel James L. Kilgore* and *Lieutenant Colonel Robert O. Rollman.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A barroom brawl during the evening of August 30, 1958, brought about the present difficulties of the two accused airmen. As a result of their activities on that occasion, they were subsequently charged with a breach of the peace by wrongfully engaging in an affray in a public place, in violation of Article 116, Uniform Code of Military Justice, 10 USC § 916, and, despite their pleas to the contrary, were found guilty by special court-martial. The imposed sentences were approved by the convening authority after minor modification. Thereafter, the officer exercising general court-martial jurisdiction approved, and a board of review in the office of The Judge Advocate General of the Air Force affirmed.

Testimony on behalf of the prosecution established that an Airman Jones was the victim in the altercation. On the evening in question, he had gone to a bar and was awaiting the arrival of two friends. During the waiting period, an Airman Moore, who was pres-

625

ent in the company of the two accused, made several remarks referring to Jones' race and indicating his presence in the establishment was not desired. Following these comments, Jones was struck on the head, severely cut by a bottle and knocked to the floor, where he was kicked by the accused Davis. While in that position, he was the target of glasses thrown by both accused.

The accused testified under oath on their own behalf, and Davis denied having taken any aggressive action toward the victim. He claims to have been merely a spectator. Watson admitted having struck the victim once with a chair, but he asserted his act was in self-defense after the victim had drawn a knife. Only he and his companion, Airman Moore, testified to the presence of a weapon, for Jones denied having made threatening gestures or having possessed a knife, and this testimony was corroborated by other witnesses to the affray.

Davis on direct examination fixed the respective position of the participants at a certain stage of the assault. On cross-examination, trial counsel asked him if he had not stated to an Airman First Class Bullock that he was unable to say where Airmen Watson and Moore were positioned during the incident. Trial counsel's obvious purpose was to weaken the direct testimony of Davis by showing a prior inconsistent statement. Immediately following the question, defense counsel objected to this particular inquiry on the ground that admission of any statement would be in violation of Article 31, Uniform Code of Military Justice, 10 USC § 831. After some discussion, the objection was overruled, and the error urged on this appeal is that the president of the court erred in admitting the pretrial statement without a prior affirmative showing by the Government that the accused was warned of his rights under Article 31 and that the statement was made voluntarily. Hereafter, the opinion will refer only to the accused Davis.

The initial deficiency in the argument advanced by the accused arises from the state of the record. The only bit of

information which sheds light on the issue is contained in a written pretrial statement. If the statement is in the record, then it shows affirmatively that the accused was informed of his rights under Article 31 of the Uniform Code of Military Justice, before he was interrogated and that the admission was voluntarily made. On the contrary, if the statement is not before the court, there is a total absence of anything to show any codal violation. The reason we place the admission of the statement in doubt arises from the manner in which it was used at trial, but ultimately that is of little consequence for, regardless whether it is or is not considered, accused's contention fails.

We first assume the written pretrial statement is before us by incorporation. One statement supposedly made by the accused prior to trial—not identified as oral or written—was referred to by counsel in his course of cross-examining the accused. In an ensuing colloquy between trial and defense counsel over its admission, the latter demanded production of accused's written pretrial statement. Pursuant to this demand, it was given to trial defense counsel and then shown to the accused. It apparently more than served its purpose, for upon inspection defense counsel withdrew his demand. Undoubtedly, the opening paragraph shows very clearly the reason that prompted this action. Among other things, the document affirmatively established warning and voluntariness. Parenthetically, in support of our first assumption, we point out that the defense had it marked as an exhibit for use during trial and, after having read its contents, accused testified it was truthful and consistent with his in-court testimony. According to him, the apparent inconsistency was not real, for his two statements involved different periods of time.

Taking the alternative view of the record and assuming the written pretrial recital is not before us, the only evidence in the record is that on a given date a statement by the accused was made to a named airman first class. There is no showing whether it was the

result of any interrogation or given during any formal or informal investigation. It does not appear that the airman was engaged in crime detection work, that he suspected the accused of any offense, or that he was anyone but a friend who was merely listening to barracks gossip volunteered by the accused. The statement was not incriminatory, and it in no way identified the accused as a participant in the altercation. From all that appears, it was entirely consistent with his claim that he was a spectator. In short, there is not one shred of evidence which brings the statement within the sweep of Article 31.

Out of an abundance of caution for the rights of the accused, we will look to the statement only to take notice of the fact that he was being interrogated at the time his pretrial statement was given. With that assumption as a predicate, it becomes necessary to consider the fundamental and long-recognized dichotomy between those statements by a suspect or accused which constitute confessions and those which amount only to admissions. See Wigmore, Evidence, 3d ed, § 821. Paragraph 140a of the Manual for Courts-Martial, United States, 1951, states at the outset that, "A confession is an acknowledgment of guilt, whereas an admission is a self-incriminatory statement falling short of an acknowledgment of guilt." In the instant case, accused's remark in his pretrial statement to which trial counsel adverted was that, "I couldn't say where Watson or Moore was, only three I know where was, was Scott, Schriefer and myself." Though lacking the niceties of grammar, it is clear, and appellate defense counsel do not dispute that the accused's statement amounted to no more than an admission. In no sense could it be termed an acknowledgment of guilt constituting a confession. We are, therefore, confronted with the question of whether a pretrial admission can be used for purposes of impeachment without an affirmative showing that Article 31 was complied with prior to the time the statement was given. The authorities are clear that it may be used.

Paragraph 140a of the Manual, supra, provides in part:

"The admissibility of a confession of the accused must be established by an affirmative showing that it was voluntary, unless the defense expressly consents to the omission of such a showing, but an admission of the accused may be introduced without such preliminary proof if there is no indication that it was involuntary."

This language is clear and unequivocal, and several of our prior cases support our belief that it is dispositive of the present issue. In United States v Seymour, 3 USCMA 401, 12 CMR 157, the accused, while suspected of possessing narcotics, was questioned concerning his purpose in visiting the house in which he was seized. The accused replied that he "was there to get a 'fix'," and when this admission was introduced at trial, there was no evidence of voluntariness or prior Article 31 warning as a predicate. In discussing the provisions of paragraph 140a of the Manual, the Court stated:

". . . There can be no doubt that an appropriate warning was required by Article 31. However—and despite its obscurity—the obvious import of the quoted Manual language is that there need be *affirmative* proof that such warning was given only where affirmative evidence that the statement was voluntary is required. . . . As we have seen, affirmative evidence of voluntariness is mandatory—in the case of an admission rather than a confession—only when there is some indication that the admission was involuntary."

Clearly, the Court has taken the language of the Manual in its ordinary meaning and has firmly fixed the rule that, in the absence of some indication that an admission was made involuntarily, it may be introduced in evidence without a preliminary showing of voluntariness and without proof that an Article 31 warning was tendered the accused.

In United States v Josey, 3 USCMA

767, 14 CMR 185, we reaffirmed the rule in this unambiguous language:

". . . Thus we conclude that, if the statement is to be regarded as a confession, it was improperly admitted in evidence. On the other hand, if the statement is to be treated as amounting to no more than an admission, it may be introduced in evidence without preliminary showing of voluntariness and without proof that warning had been accorded the accused—this, in the absence of some indication that it had been involuntarily made. Manual, supra, paragraph 140a; United States v Seymour, 3 USCMA 401, 12 CMR 157. The converse of this is true, of course. That is, if there was an appearance of involuntariness, then it was incumbent on the Government, as a foundation for admission, to produce evidence of both voluntariness and appropriate warning."

We went on in that case to point up with particularity the difference between indication and clear showing. This is what we stated:

". . . However, in our view the 'indication' contemplated by the Manual differs markedly from a clear showing that the confession was involuntary—and involves a wholly different quantum of proof. This difference, we believe, equates roughly to that between a mere suspicion that a certain situation may have obtained, on the one hand, and the offer of convincing evidence to the same effect, on the other."

Applying this strict test to the facts of our present case, it is clear there was no indication of involuntariness. As previously mentioned, the pretrial statement from which trial counsel drew accused's remark is the only straw in the wind bearing on this matter, and obviously that discloses a warning, which fact is adverse to the accused. When the pretrial statement is discarded, the record is devoid of evidence tending either to establish or negate failure to warn or voluntariness. The facts and circumstances surrounding the giving of the statement are unknown, and certainly there is nothing in this record which reveals a lack of compliance with Article 31.

Appellate defense counsel contend that when an objection was registered to trial counsel's question, the defense supplied an indication of involuntariness. The objection and argument on the point were entirely legalistic. Clearly the "indication" we were speaking of in the prior decided case must rest on some evidence, some fact or circumstance suggesting a possible violation of Article 31. Here trial defense counsel simply argued a legal concept based upon his interpretation of that Article and, although he asserted the Government had failed to make an affirmative showing of compliance therewith, it is significant that the record does not suggest any fact, circumstance or reason to support his contention and when he obtained the written statement and noticed its contents, his enthusiasm dimmed. Had it given any indication of noncompliance with the Article, we are sure it would have been used for purposes other than rehabilitation.

In support of their argument for reversal, appellate defense counsel cite United States v Kelley, 7 USCMA 584, 23 CMR 48, where the Court held a pretrial admission had been erroneously received in evidence. In particular, they quote certain language to the effect that any evidence obtained in violation of Article 31 is inadmissible, regardless of its incriminating effect. The language relied upon is this:

". . . There is nothing ambiguous about these Code provisions. A statement was here requested by a person subject to the Code and directed toward 'a person suspected of an offense' without first informing that individual as to the nature of the accusation against him and without advising him that he would not have to make any statement and if he did make a statement that it could be used against him in a trial by court-martial. Article 31 was therefore violated. Since Article 31 represents the law under which this Court and the Armed Forces operate,

628

it is controlling and nothing in the Manual can whittle away the substantive protections given by it to an accused. Any evidence obtained in violation of Article 31 is inadmissible. The President may, under Article 36(a) of the Code, 10 USC § 836, prescribe 'procedure, including modes of proof, in cases before courts-martial.' But promulgation of procedure and modes of proof cannot delete or restrict substantive rights given an accused under the Code. When during a trial—whether an admission or confession—it is perfectly obvious that a statement has been secured in violation of Article 31, it should not be admitted."

This case does not trespass on the rule of *Josey* and *Seymour*, supra, and the quoted portion points up the distinguishing feature of the instant case. There it was perfectly obvious that a violation of Article 31 had occurred, while here all indications are to the contrary. No doubt if this record suggested a clear violation of the Article, a reversal might be in order but that situation does not confront us.

For the reasons stated herein, we conclude the Government was not obliged to make a showing of voluntariness prior to its introduction of the admission and that the president of the court was correct in his ruling. The decision of the board of review is, therefore, affirmed.

Chief Judge QUINN concurs in the result.

FERGUSON, Judge (concurring in the result):

I concur in the result.

As indicated by the author of the principal opinion, these accused were found guilty of breaching the peace, in violation of Uniform Code of Military Justice, Article 116, 10 USC § 916. Following modification of the adjudged forfeitures by the convening authority, other appellate agencies affirmed their sentences, and we granted review on the issue whether the trial counsel erred to their prejudice in seeking to impeach the testimony of accused Davis by showing that he made a prior inconsistent statement without first establishing that it was obtained in compliance with Code, supra, Article 31, 10 USC § 831.

From the evidence, it appears that Davis, Watson, Airman Moore, and other military personnel were drinking in a cafe in Furstenfeldbruck, Germany. The appearance of a colored airman, Jones, led to a racial altercation. Jones was viciously assaulted and dragged from the establishment. Accused Davis testified that he was standing at the bar and heard a commotion behind him. Turning, he saw Moore bent backward over a table with Jones facing him. He restrained Watson from interfering in the matter and denied personally taking part in the assault. On cross-examination, the trial counsel asked Davis if he had made a pretrial statement to an Airman Bullock. The defense counsel objected on the basis that there had been no showing the statement had been taken in compliance with Code, supra, Article 31. After the objection was overruled, the accused admitted that he had made such a statement and he had declared therein that he did not know the whereabouts of Watson and Moore during the incident. Following that testimony, the defense counsel demanded the production of the statement. The record reflects that the trial counsel handed it to him. Immediately thereafter, the defense counsel had "a document" marked as "Defense Exhibit A." On redirect examination, he tendered it to Davis; elicited the information that it was his written pretrial statement; and that Davis considered it to be consistent with his testimony, as his in-court relation of Moore's whereabouts concerned a different part of the incident from that with which he initially described in the statement to Bullock. When asked whether he desired to offer the statement in evidence, defense counsel remarked pertinently:

"It doesn't have to be admitted. You have to have usually something on it so the record knows what it is you are talking about."

No defense exhibit is attached to the record of trial. However, the allied

papers contain a handwritten statement made by the accused Davis which is marked "Def Ex A." This document bears the same date as the statement to which all parties referred during Davis' testimony; was made to an Airman Bullock; and contains the alleged inconsistency upon which this appeal is based. It also indicates that Davis was properly advised of his rights under Code, supra, Article 31, and that the statement was obtained from him without coercion or unlawful influence.

In my opinion, the foregoing matters irresistibly dictate the conclusion that the statement contained in the allied papers is the declaration to which both parties made reference during the trial. Moreover, defense counsel's use of the statement indicates his intent to have it incorporated in the record. While it properly should have been attached to the transcript as a defense exhibit, we are not required to close our eyes to reality and, because of the carelessness of those charged with the physical assembly of a record of trial, pretend ignorance of the contents of a document so plainly before us.

As I believe the statement is thus properly before us, I find there is evidence in the record, sufficient to establish for appellate purposes, that the accused Davis was properly advised before he made the declaration used to impeach him, if, indeed, it had that effect. Accordingly, I concur in the result reached by Judge Latimer and I need not express my views with respect to the other propositions which he advances.