UNITED STATES, Appellee

v

RICHARD C. LINCOLN, Specialist Four,
U. S. Army, Appellant

17 USCMA 330, 38 CMR 128

No. 20,319

December 22, 1967

*Captain Anthony F. Cilluffo* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Paul V. Melodia.*

*Captain David E. Wilson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

FERGUSON, Judge:

Tried before a general court-martial convened at Saigon, Vietnam, by the Commanding General, The Support Troops, United States Army Vietnam, the accused pleaded not guilty to a charge of premeditated murder, in violation of Uniform Code of Military Justice, Article 118, 10 USC § 918. He was found guilty of voluntary manslaughter, in violation of Code, supra, Article 119, 10 USC § 919, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for ten years, and reduction. The convening authority approved the sentence. The board of review reduced the period of adjudged confinement to seven years, but otherwise affirmed. We granted accused's petition for review on several questions which will be discussed below.

I

On June 30, 1966, the accused and Specialist Four Tucker visited several bars at Vung Tau, Vietnam. Although each had several drinks, neither was drunk on their return to their station at Vung Tau Air Field. Entering the orderly room to sign in from pass, the accused encountered Specialist Four Long, who appeared to be intoxicated. Long began to make remarks about Lincoln's failure to bathe properly. According to accused, he ignored these comments until Long approached him and spat in his face. A fist fight immediately ensued and was broken up by the Charge of Quarters and others. Both men were ordered to go to their respective barracks. As accused left, he is alleged to have threatened to kill Long, the exact nature of his declaration varying with the particular witness.

Accused returned to his quarters, apparently cooled down, and was preparing to take a shower. Specialist Four Long, who lived in another barracks, did not go there. Instead, he sought out the accused and again addressed a course of insulting remarks to him. Both accused and others attempted unsuccessfully to get Long to depart. When accused stated that he did not want any trouble, Long, seated on a footlocker, replied that he already had trouble. Lincoln turned to his locker and, as he

**331**

did so, Long arose and advanced toward him. According to accused, he picked up a hunting knife from his locker and, as he turned back to Long, the latter attempted to envelop him in a "bear hug." During the struggle, Long received a stab wound in the right side below the rib cage. It penetrated the liver and resulted in Long's death some five hours later in an Army hospital.

Accused averred he had no intention of stabbing Long but, in fear of that individual's assault, sought to use his knife as a threat to ward off harm to himself. His fear was said to be predicated on Long's advance upon him and the fact that his earlier blows in the orderly room had had no effect on his assailant, leaving him entirely unmarked. Long was said to have, in effect, impaled himself on the knife during the struggle.

## II

The first issue before us concerns the applicability of Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, 16 USCMA 629, 37 CMR 249, to certain pretrial statements of the accused utilized for impeachment purposes by the trial counsel. The issue arose in the following manner.

On cross-examining the accused, who had recounted the details of his encounters with Long, trial counsel referred to Lincoln's pretrial statement to criminal investigators that "you blacked out and don't remember what happened." Accused admitted he had made the statement but, in what the board of review termed "nice forensic footwork," declared that he had been able to overcome the failure of his memory by subsequent reconstruction of the scene. Referring to the same statement, trial counsel further impeached the accused by obtaining his admission that he had informed investigators of an earlier argument with Long, which he had previously denied in his testimony.

The board of review conceded the use of these statements to impeach the ac-

cused without the slightest attempt to prove compliance with the ■ warning requirements laid down in *Miranda* and *Tempia*, both supra, was erroneous. We agree. Regardless of the purpose for which a pretrial statement is to be used, the burden rests upon the United States to provide evidence of compliance with the necessary warning of accused's right to remain silent and to be represented by an attorney. The doctrine of *Miranda,* supra, is applicable to all statements made by an accused during a period of custodial interrogation. Indeed, as to exculpatory statements used for impeachment purposes, the Supreme Court expressly noted therein, at page 477:

". . . In fact, statements merely intended to be exculpatory by the defendant *are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication.* These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement."* [Emphasis supplied.]

See also Manual for Courts-Martial, United States, 1951, paragraph 153b (2) (c).

The Government urges, however, that the impeaching statements used by the trial counsel amounted to no more than admissions and, referring to Manual, supra, paragraph 140a, contends that, in the case of admissions as distinguished from confessions, there is no burden on it affirmatively to establish compliance with *Miranda,* supra, before using the statement. In this connection, it refers to our decision in United States v Lake, 17 USCMA 3, 37 CMR 267.

*Lake,* supra, however, involves the use of a statement obtained before the effective date of *Miranda,* supra. It dealt only with compliance with Code, supra, Article 31, 10 USC § 831. Again, the situation is different with respect to *Miranda* warnings, and, once more, the lack of any distinction between ad-

**332**

missions and confessions is the subject of express comment in that case:

> "The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. *No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense.* The privilege against self-incrimination protects the individual from being ·compelled to incriminate himself in any manner; it does not distinguish ·degrees of incrimination." [Miranda v Arizona, supra, page 476.] [Emphasis supplied.]

And the Court likewise made clear that the burden lay on the prosecution to establish compliance with *Miranda,* supra, before it resorted to accused's pretrial statements. Thus, at page 444, it declared, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." We have ourselves referred to this placement of the burden on the Government's shoulders, in the following language:

> ". . . The burden is on the United States to establish compliance with *Miranda* and *Tempia,* both supra, beyond a reasonable doubt, and absence of objection thereto does not excuse its failure to prove a proper warning." [United States v Gustafson, 17 USCMA 150, 151, 37 CMR 414, 415.]

True, the Manual distinction between confessions and admissions had the effect of law and was binding upon us as to pre-*Miranda* interrogations and trials, United States v Lake, supra; United States v Smith, 13 USCMA 105, 32 CMR 105; but with the *Miranda* decision, the difference was obliterated on a constitutional basis. United States v Tempia, supra. In like manner, the Manual rule has been modified. The correct principle requires proof by the United States of the proper warning as

to accused's right to remain silent and to a lawyer, as the predicate for the use of any pretrial statement, obtained during custodial interrogation, whether it be inculpatory or exculpatory, or used on the merits or merely to impeach the accused. It is apparent that the Government did not, on this record, show such compliance. Reversible error, therefore was committed, and we necessarily remand for a rehearing. United States v McCauley, 17 USCMA 81, 37 CMR 345.

Turning to the views of our dissenting brother, we suggest the comment quoted from a footnote in *Miranda,* supra, at page 495, supports the view which we take herein rather than the contrary position that such decision did not change the law respecting trial objection to pretrial statements. In the particular instance, the Supreme Court was dealing with a pre-*Miranda* trial. Acknowledging the former rule regarding objection was then applicable, it went on to declare itself reluctant to impose the previously extant civilian principle when there could have been no awareness below of the new doctrine. Such a comment is, of course, entirely consistent with the much more explicit declarations in the course of the *Miranda* opinion itself, placing the burden of proving compliance with the new rules in all future cases squarely upon the Government, regardless of whether the statement be inculpatory, exculpatory, or an admission or confession.

Nor is United States v Armetta, 378 F2d 658 (CA 2d Cir) (1967), in point. The situation there was one in which accused testified on direct examination that he had made no statements to the police at all. As the Court noted, this "crumbled rather speedily" when the prosecution proved, without objection, that he had made such statements. The situation there presented is, therefore, clearly not what he have here. See Walder v United States, 347 US 62, 98 L ed 503, 74 S Ct 354 (1954), and cf. United States v Gustafson, 17 USCMA 150, 37 CMR 414.

Similarly, in State v Sutton, 152 NW 2d 57, upon which the Chief Judge also relies, it is interesting to note that the

**333**

inapplicability of *Miranda,* supra, due to the date of the trial, rather than waiver, was the decision's governing consideration.

Be that as it may, the military rule regarding the burden of proof and lack of objection regarding pretrial statements has always differed from the civilian rule. Manual, supra, paragraph 140*a*. It distinguished between the Government's burden only on the basis of the statement's characterization as an admission or confession. United States v Lake, supra. As we have noted, *Miranda,* supra, expressly disavows any such difference. We likewise apply the burden without regard to the nature of the statement.

### III

The other issues which warrant discussion involve the law officer's instructions on accident and the maximum sentence. As the use of the accused's statements serve to dispose of the case, we comment only briefly on these questions in order to avoid their recurrence in any future trial.

First, complaint is made that the law officer failed, in his advice regarding the defense of accident, expressly to place the burden on the Government to prove beyond a reasonable doubt the homicide was not the result of accident. See United States v Gilbert, 16 USCMA 446, 37 CMR 66. We need not decide whether, as the Government argues, that such burden has, when the instructions are considered as a whole, been properly laid at its door. Suffice it to say the matter may be simply cured at a rehearing by appropriate additional language, as noted above, to the advice herein given. See United States v Gilbert, supra.

Secondly, the accused contends that the law officer erroneously limited his instructions on the maximum sentence to a statement of the penalty which might be imposed and the mechanics of voting. Our decision in United States v Wheeler, 17 USCMA 274, 38 CMR 72, serves to dispose of this question. In

any future trial, our opinion in that case will serve as a guide to obviate the erroneous lack of further advice to the court members.

Finally, our own scrutiny of the record suggests some deficiencies in the instructions regarding self-defense. Thus, though the evidence demonstrated accused was in the area of his own bed—his military "home"—reference was made to consideration of his failure to retreat as a factor in determining whether his resort to deadly force was honestly necessary. In the privacy of an individual's home, retreat is not a factor to be considered by the court in connection with self-defense. See United States v Adams, 5 USCMA 563, 18 CMR 187. It is only when the accused is not at "home" that retreat becomes relevant. United States v Smith, 13 USCMA 471, 33 CMR 3. In like manner, we are of the view the law officer erred in stating self-defense was not a defense to involuntary manslaughter based on culpable negligence. Self-defense renders any homicide excusable and is a defense to all degrees thereof, entitling the accused to acquittal. Warren on Homicide, Perm ed, § 148; Wharton, The Law of Homicide, 3d ed, § 224; cf. Beard v United States, 158 US 550, 39 L ed 1086, 15 S Ct 962 (1895). We suggest, therefore, a substantial restudy of the instructions on self-defense prior to advising the court-martial at any rehearing.

The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting) :

Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966), does not apply to the particular problem presented by this case. Before *Miranda,* it was settled law in the civilian courts that, except in circumstances indicating a manifest miscarriage of justice, appellate review would not lie as to the admissibility of a pretrial statement by

the accused to which he interposed no objection at trial. Payton v United States, 222 F2d 794 (CA DC Cir) (1955); Gilliam v United States, 257 F2d 185 (CA DC Cir) (1958), certiorari denied, 359 US 947, 3 L ed 2d 680, 79 S Ct 728, rehearing denied, 359 US 981, 3 L ed 2d 931, 79 S Ct 899. *Miranda* did not change that rule; rather in the companion case of Westover v United States, the Supreme Court acknowledged the rule and determined it was inapposite to the facts of the case. Thus the Court said:

> "The failure of defense counsel to object to the introduction of the confession at trial, noted by the Court of Appeals and emphasized by the Solicitor General, does not preclude our consideration of this issue. Since the trial was held prior to our decision in *Escobedo* and, of course, prior to our decision today making the objection available, the failure to object at trial does not constitute a waiver of the claim. See *e.g., United States ex rel Angelet* v *Fay*, 333 F2d 12, 16 (CA 2d Cir. 1964), aff'd, 381 US 654 (1965). Cf. *Ziffrin, Inc.* v *United States*, 318 US 73, 78 (1943)." [Miranda v Arizona, Westover v United States, 384 US 436, 495, footnote 69, 16 L ed 2d 694, 86 S Ct 1602 (1966).]

Since *Miranda,* Federal and State courts have consistently held that *Miranda* did not change the rule of waiver. In United States v Armetta, 378 F2d 658 (CA2d Cir) (1967), the accused contended for the first time on appeal, as the accused contends here, that he was improperly cross-examined as to statements made to the police without the preliminary warning required by *Miranda.* The Court of Appeals rejected the argument. In pertinent part it said:

> "In view of the total lack of objection we *could not* reverse for admission of this evidence except by invoking the 'plain error' rule, F. R. Cr. P. 52(b). Armetta contends receipt of the evidence was exactly that in light of the Supreme Court's explicit dictum that the *Miranda* requirements apply to exculpatory statements

'used to impeach his [defendant's] testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication.' 384 US at 477, 86 S Ct at 1629. We are willing to assume *arguendo* that . . . despite previous decisions as to waiver of the privilege by a criminal defendant's taking the stand . . . this statement in Miranda covers evidence adduced in cross-examination or in rebuttal as fully as in the prosecution's case in chief, except so far as Walder v United States, 347 US 62, . . . may be applicable. But we are by no means certain that the Court was addressing itself to the unusual situation where the defendant's testimony puts in issue the very question of what he told the police. . . . [In any event] the inadmissibility of Armetta's statement that he had borrowed the car was not so 'plain' that the judge should have been expected to intervene when defense counsel did not. In short, this episode, like the one previously discussed, does not come within the rule whereby 'In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" [United States v Armetta, supra, pages 661–662.]

Similarly, in State v Sutton, 152 NW 2d 57, the Supreme Court of Minnesota considered the effect of *Miranda* on the waiver rule. It said:

> "It is true, of course, that a meritorious constitutional claim for the exclusion of evidence under either Escobedo or Miranda may be foreclosed on appeal by the failure to make timely objection in the trial court." [See also Brooks v State, 229 Atl 2d 833 (Delaware) (1967).]

Before *Miranda,* military law also recognized the rule of waiver as applied to a pretrial statement by the accused. It distinguished, however, be-

tween a confession and an inculpatory statement admitting less than complete guilt. The Manual for Courts-Martial provides that unless the accused consents to the admission in evidence of a pretrial confession, the Government must affirmatively demonstrate that the accused was first properly warned of his rights under Article 31 of the Uniform Code and that the statement was made voluntarily. Manual for Courts-Martial, United States, 1951, paragraph 140a. A failure to object is not the equivalent of consent and, therefore, in the absence of evidence of warning and voluntariness, a confession is inadmissible. United States v Lake, 17 USCMA 3, 6, 37 CMR 267; United States v Smith, 15 USCMA 416, 35 CMR 388. No such preliminary showing is required, however, for the admission of an inculpatory pretrial statement not amounting to a confession; hence, a failure to object is a waiver of the right to attack admissibility for the first time on appeal, except when to apply the waiver rule would result in a manifest miscarriage of justice. United States v Davis, 10 USCMA 624, 28 CMR 190; see also United States v McCauley, 17

USCMA 81, 37 CMR 345. In this respect, the military rule as to an incriminating pretrial admission is like the civilian rule as to a pretrial confession. Since *Miranda* did not disturb the waiver rule in the civilian criminal courts, it manifestly did not affect the military rule.

Here, the first reference to the Criminal Investigations Detachment by name occurred in an unresponsive answer by the accused to a question asked by trial counsel. There was no objection to the answer; no motion to strike; and no objection by the defense to succeeding questions by trial counsel expanding on the answer. Also, the matter was offered only for impeachment and did not relate directly to the critical issues in the case. The circumstances therefore do not require appellate review to avoid a miscarriage of justice. United States v Armetta, supra.

I have examined the other assignments of error and I am satisfied none of the issues raised by the accused merits reversal of his conviction. I would affirm the decision of the board of review.