UNITED STATES, Appellee

v

PATROCINIO SANTOS YABUT, Jr., Stewardsman,
U. S. Navy, Appellant

20 USCMA 393, 43 CMR 233

No. 23,253

March 5, 1971

*Gervasio G. Sese, Esquire*, and *Lieutenant Donald B. Brant, Jr.*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Commander E. M. Fulton, Jr.*, JAGC, USN.

*Lieutenant Thomas F. Bastow*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles J. Keever*, USMC.

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of unpremeditated murder. On this appeal he challenges the correctness of part of the law officer's instructions on self-defense.

The accused was a steward aboard the U.S.S. FURSE. He shared a berthing compartment with Commissaryman First Class Gerald A. McCarthy and several other crewmen. About 1:00 a.m., November 6, 1968, he and McCarthy separately returned to the ship from liberty. They met in the compartment. As the result of an altercation between them, described differently by Government witnesses and

the accused, the accused went to the ship's pantry. There he obtained two knives, one had a blade of about eleven inches and the other a blade of about five and three-quarters inches. According to the accused, he took the knives to protect himself against McCarthy, who was about his size but of heavier build. Armed with the knives, the accused returned to the berthing compartment. He testified that, "as . . . [he] stepped into the compartment," McCarthy came up to him and grabbed the big knife; McCarthy's action forced him "to fight to protect . . . [his] life." The fight ended when McCarthy collapsed and the accused ran from the area. About two hours later, McCarthy died, with the cause of death attributed primarily to shock resulting from loss of blood from penetrating wounds involving his liver and spleen.

At an out-of-court hearing to consider appropriate instructions on the issues, the law officer concluded that the evidence raised the question of self-defense as justification for the homicide. Several requests for particular instructions on the point were made by counsel; and defense counsel objected to a part, but the objection was overruled. The final instructions are set out in the Appendix; the part which is the subject of this appeal is the emphasized portion of the following extract:

"In determining whether the accused, in fact, honestly believed the degree of force which he employed was necessary for his protection, you may consider his age, education, training, experience and other personal characteristics and attributes, together with all of the facts and circumstances of the incident, as they appeared to him at the time. The question presented is whether, seen through the accused's own eyes, the situation was one requiring that he kill McCarthy to avoid death or serious injury to himself.

"You are advised that a person is not required to retreat where, being without fault and provoking the as-

sault upon himself, he is at a place where he has a right to be. You are further advised that a sailor's bunk aboard ship is his home and if he is assaulted and improperly ejected therefrom by a shipmate he is under no duty to remain away from his bunk, but has a right to return thereto at will. *However, the evidence tending to show that the accused had an opportunity to retreat safely should be considered by you, together with all of the other circumstances, in deciding the issue of self-defense.*" [Emphasis supplied.]

Relying upon United States v Adams, 5 USCMA 563, 18 CMR 187 (1955), and United States v Lincoln, 17 USCMA 330, 38 CMR 128 (1967), appellate defense counsel contend that the instructions are erroneous because "a man need not consider retreat from an attack in his own home." The contention has some support in dictum in *Lincoln*, but the rationale of both *Lincoln* and *Adams* is to the contrary.

In *Adams*, we held improper argument by trial counsel, which was adopted by the law officer, to the effect that a person attacked by another has the absolute duty to retreat as far as he safely can before he can rely upon deadly force in self-defense. We noted that trial counsel had advanced "the theory that the accused had no legal right to kill, without first showing that he actually retreated." Remarking that the "basis of self-defense is necessity," we went on to say that necessity depends upon the facts presented by the evidence and, quoting from United States v Troglin, 3 USCMA 385, 391, 12 CMR 141 (1953), we pointed out that "'the possibility of retreat is only a part'" of the total evidence. The evidence showed the accused was in his own tent confronted by an intruder, who, according to a witness, would have shot the accused "'if he didn't shoot'" first. We observed that in the circumstances revealed by the record the accused "had no obligation to retreat before defending himself against an armed intruder." The crucial point of the opinion was in the statement that

"under the facts, the accused had no duty to stop to consider whether he might 'fly with safety, or . . . disable his assailant rather than . . . kill him.'" *Adams,* supra, at pages 567, 571. We, therefore, concluded it was prejudicial error to allow the court members to believe that the accused had a duty to retreat. Nothing in the opinion, however, indicated that, because a person is in his own home, the reasonableness and feasibility of retreat from danger need never be considered in determining whether he properly resorted to deadly force.

United States v Lincoln, supra, did not decide the problem presented by this appeal. In dictum, and in regard to the particular facts of the case, it was suggested that in the "privacy of an individual's home, retreat is not a factor to be considered by the court in connection with self-defense. . . . It is only when the accused is not at 'home' that retreat becomes relevant." *Id.,* at page 334. However, the cases cited for these remarks do not hold that reasonableness of retreat is never a circumstance to consider in determining whether the accused was justified in his use of deadly force in his own home. One of the cases cited was *Adams,* which, as we have already noted, recognizes that while the failure to retreat is not categorical proof of guilt, it may be a factor for the court's consideration. The other case, United States v Smith, 13 USCMA 471, 33 CMR 3 (1963), also does not support the assertion that retreat is irrelevant to self-defense in the home.

In *Smith,* the accused was attacked in the latrine of an enlisted men's club. The opinion reviewed the law of self-defense and the role of retreat to determine when deadly force may be resorted to by a person under assault. No distinction was made, or noted, between the right of self-defense in the privacy of the home or in a public place. In significant part, the opinion said:

"From the foregoing, it should be apparent that the doctrine of 're-treat to the wall' has no place in self-defense instructions. Especially, after *Adams,* it should be clear that the Supreme Court's decision in the *Brown* case states the appropriate rule. There is no categorical requirement of retreat. Rather, the opportunity to do so safely is only a single factor, to be considered by the triers of fact together with all the circumstances in evaluating the issue of self-defense. And those who read the Manual for Courts-Martial to impose an absolute and categorical requirement of retreat before one may, in defense, kill or resort to use of force likely to result in grievous bodily harm, clearly misconstrue the rule." [*Id.,* at page 479.]

Thus, *Smith* stands for the proposition, taken from the opinion of the Supreme Court of the United States in Brown v United States, 256 US 335, 343, 65 L Ed 961, 41 S Ct 501 (1921), which was also the main support for this Court's *Troglin* opinion, that "[r]ationally, the failure to retreat is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing; not a categorical proof of guilt." See *Smith,* supra, at page 478.

Several examples demonstrate the fallacy of the contention that reasonableness of retreat is always immaterial to justification of the use of deadly force to repel an assault when the assault occurs in the defendant's home. If a husband and wife were to quarrel in their home, and the wife assaulted the husband under circumstances indicating it was reasonable and eminently practical for the husband to prevent injury to himself by withdrawing to another room, it could not, in our opinion, be successfully argued that because the husband was in his own home the triers of the facts could not consider the failure to retreat, in determining whether he was justified in the use of deadly force. Similarly, if the accused and an invited guest became involved in a situation in which the accused used deadly

**395**

force, the fact that they were in the accused's home would not, in our view of the law, prevent the fact finders from considering whether, under the circumstances, the accused could readily have avoided injury by retreat, and thereby made resort to deadly force unnecessary. As the Court of Appeals for the District of Columbia pointed out in Josey v United States, 135 F2d 809, 810 (CA DC Cir) (1943), a case also cited with approval in *Smith*, supra, the Supreme Court in Brown v United States, supra, did not "repudiate the requirement that one must reasonably believe he is in immediate danger of death or of grievous bodily harm," and the Government could, therefore, examine the accused about his failure to leave the immediate scene before resorting to deadly force.

The instructions here do not equate the failure to retreat to proof of guilt; they do not impose upon the accused a duty to retreat. They are not, therefore, contrary to *Adams* or *Lincoln*. Retreat is described as only one circumstance that the court members could consider in determining whether the accused was in such immediate danger of death or serious bodily harm as to justify deadly force in self-defense. That statement is consistent with *Smith*. Considering the instructions in their entirety, we perceive no error.

The decision of the United States Navy Court of Military Review is affirmed.

## APPENDIX

"This evidence raises for the court's consideration the question of self-defense with respect to the principle [sic] offense charged and all lesser included offenses. In this regard you are advised that a person may lawfully meet force with force in protecting himself, and in so doing may justifiably kill or maim his assailant to avoid death or serious bodily harm. A killing may be excused on grounds of self-defense if the accused honestly believed on reasonable grounds, from all of the circumstances as they appeared to him, that the killing was necessary to save his own life or to prevent great bodily harm. For the defense of self-defense to be available to the accused he must not have been the aggressor or intentionally provoked the altercation with the victim. You are advised, however, that if a person, after provoking a fight withdraws in good faith and his adversary follows and renews the fight, he is no longer the aggressor and may avail himself of the right of self-defense.

"You are advised that one is not an aggressor and is not deprived of the defense of self-defense where, after a quarrel he arms himself only for protection and does not intentionally do some act calculated to lead to or provoke a conflict. If the accused honestly believed that he was in eminent [sic] danger of death or great bodily harm, and that his only means of avoiding the impending danger was to take the life of McCarthy, and that under the circumstances, as they appeared to him, he had a reasonable ground for such belief, the defense of self-defense is available to him, even though, in fact, he may have been mistaken as to the actual existence or eminence [sic] of danger.

"In determining whether the accused was justified in killing McCarthy under the foregoing standard, both of two separate tests must be met. First, in order to lawfully use a deadly force or instrument against his assailant the accused must honestly, on reasonable grounds, fear death or serious bodily harm from the attack upon him. The criterion here is reasonableness. Would a reasonable adult man, under the circumstances as they appeared to the accused, have believed that he was in eminent [sic] danger of death or great bodily harm?

"The second test is whether the accused believed that it was necessary for his protection to use the degree of force which he used. Here you are not determining what a reasonable man would have believed, but whether the accused himself actually and hon-

estly believed the circumstances required the degree of force which he, in fact, employed.

"In applying each of these separate tests you must carefully give consideration to all of the facts and circumstances at the time of the incident as they appeared to the accused. Thus, in determining whether the accused believed on reasonable grounds that he was in eminent [sic] danger of death or serious bodily harm, you should take into account the relative age and rates of the accused and McCarthy; the evidence of the intoxicated condition of McCarthy; the evidence of McCarthy's reputation for being a peaceful, well conducted person and all the other circumstances of the affray.

"In determining whether the accused, in fact, honestly believed the degree of force which he employed was necessary for his protection, you may consider his age, education, training, experience and other personal characteristics and attributes, together with all of the facts and circumstances of the incident, as they appeared to him at the time. The question presented is whether, seen through the accused's own eyes, the situation was one requiring that he kill McCarthy to avoid death or serious injury to himself.

"You are advised that a person is not required to retreat where, being without fault and provoking the assault upon himself, he is at a place where he has a right to be. You are further advised that a sailor's bunk aboard ship is his home and if he is assaulted and improperly ejected therefrom by a shipmate he is under no duty to remain away from his bunk, but has a right to return thereto at will. However, the evidence tending to show that the accused had an opportunity to retreat safely should be considered by you, together with all of the other circumstances, in deciding the issue of self-defense.

"Likewise, you should give similar consideration to the evidence as to whether other persons who might have aided the accused were present when the incident occurred. The law does not demand detached reflection under pressure of a violent attack or in a fast-moving situation, and the accused is not required to pause at his peril to evaluate the degree of his danger or the degree of force required to repel it. Thus, in your deliberations as to the accused's state of mind, you must give due consideration to the violence and rapidity which characterized the incident.

"The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt, that the accused did not act in self-defense, as I have explained that term to you, you must find him not guilty of the principle [sic] offense of premeditated murder and all lesser included offenses."

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):
I dissent.

In United States v Lincoln, 17 USCMA 330, 334, 38 CMR 128 (1967), a majority of this Court held:

". . . In the privacy of an individual's home, retreat is not a factor to be considered by the court in connection with self-defense. See United States v Adams, 5 USCMA 563, 18 CMR 187 [1955]. It is only when the accused is not at 'home' that retreat becomes relevant. United States v Smith, 13 USCMA 471, 33 CMR 3 [1963]." [Emphasis supplied.]

The only difference between this case and Lincoln, insofar as the issue under consideration is concerned, is the fact that in Lincoln only the accused was at "'home'" (in his own barracks) and the victim of the homicide was domiciled elsewhere. In this case, both Yabut and the victim, McCarthy, shared a berthing compartment. To refer, as do my brothers, to the above-quoted statement from Lincoln as dictum, is to misunderstand the purpose of the holding.

Lincoln was charged with unpremeditated murder and found guilty of involuntary manslaughter. Because the record of trial failed to reflect that Lincoln had been warned of his rights in accordance with the requirements of Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967), this Court held that it was prejudicial error to attempt to impeach his trial testimony by use of the unwarned pretrial statements he had made to criminal investigators. Inasmuch as a rehearing was in order, it was necessary, for the purpose of giving guidance, to resolve other questions which appeared in the record of trial. One of these issues concerned the reference which was made to consideration of his failure to retreat as a factor in determining whether his resort to deadly force was necessary, although the evidence demonstrated that the accused was in the area of his own bed—his military *home*. As noted above, we held that retreat is *not* a factor to be considered by the court in connection with self-defense when the accused is in his own home.

This view is well supported by the law in other jurisdictions, even in those cases where, as here, *both parties are in their own home.* In People v McGrandy, 9 Mich App 187, 156 NW2d 48, 26 ALR3d 1292 (1967), the Michigan Court of Appeals, Division 3, in a unanimous opinion, held that the rule with regard to self-defense that a person was not obliged to retreat if assaulted in his own dwelling applied in that case notwithstanding that the defendant and her husband shared the same living quarters. Mrs. McGrandy's conviction for killing her husband was reversed and remanded for a new trial because the trial judge refused to give a defense requested instruction that a person is not obliged to retreat from his dwelling. The court, at pages 49 and 50, reasoned as follows:

"The general rule in cases where self-defense is asserted is that the defendant must do 'all which is reasonably in his power to avoid the necessity of extreme resistance, by retreating where retreat is safe.' Pond v People (1860), 8 Mich 150, 176. The *Pond* case, supra, page 177, also recognized an exception to this rule:

'A man is not however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life.'

"There is a split of authority throughout the country in the applicability of this exception when the assailant and the assailed share the same living quarters where the alleged attack occurred. Justice Cardozo in People v Tomlins (1914), 213 NY 240, 107 NE 496 reasoned:

'It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. . . . The rule is the same whether the attack proceeds from some other occupant or from an intruder. It was so adjudged in Jones v State (1884), 76 Ala 8, 14. "Why," it was there inquired, "should one retreat from his own house, when assailed by a partner or cotenant, any more than when assailed by a stranger who is lawfully upon the premises? Whither shall he flee, and how far, and when may he be permitted to return?" '

Also, see Watts v State (1912), 177 Ala 24, 59 So 270; State v Leeper (1924), 199 Iowa 432, 200 NW 732; State v Phillips (1936), 8 W. W. Harr. 24, 38 Del 24, 187 A 721; and State v Grantham (1953), 224 SC 41, 77 SE2d 291.

"In People v Stallworth, supra, the defendant killed her husband by stabbing him when the deceased at-

tempted to put her out of the home forcibly. The Court quoted from the *Pond* case, supra:

> ' "a man is not . . . obliged to retreat if assaulted in his (own) dwelling." '

The court continued:

> 'If the testimony of Mrs. Stallworth at the trial which bore directly on the fatal episode were to be accepted at face value, it would appear to meet the tests of self-defense spelled out above.'

"In our opinion the *Stallworth* case, supra, aligns Michigan jurisprudential thinking with the above cited authorities.

"The failure to give defendant's requested instruction resulted in prejudicial error. Defendant's other assignments of error are without merit or do not require consideration because of our disposition of the case.

"Reversed and remanded for new trial."

The doctrine espoused in People v McGrandy, supra, is thoroughly discussed and annotated at 26 ALR3d 1296–1307, Homicide—Duty to Retreat. See particularly cases cited in § 5, "View that assailed has no duty to retreat," page 1301. In 40 Am Jur 2d, Homicide, § 167, page 454, the following is noted:

> "In some jurisdictions the general principle that one is not bound to retreat when attacked in his own home or dwelling is subject to exception when the attack is committed by an assailant who is not an intruder but is himself entitled to be upon the premises, in which case the accused must retreat if practicable before he may kill in self-defense. Other courts, however, do not recognize this exception, and hold that one attacked without fault in his own home need not retreat even though the assailant is also an occupant of the home."

The law in *this* jurisdiction, military justice, is clear—"In the privacy of an individual's home, retreat is not a factor to be considered by the court in connection with self-defense." United States v Lincoln, supra, at page 334. The doctrine of *stare decisis* requires that we follow the law as announced in *Lincoln* or expressly overrule it.

The doctrine of retreat was exhaustively considered in United States v Smith, 13 USCMA 471, 33 CMR 3 (1963). In a unanimous opinion we held, at page 479:

> "From the foregoing, it should be apparent that the doctrine of 'retreat to the wall' has no place in self-defense instructions. Especially, after *Adams*, it should be clear that the Supreme Court's decision in the *Brown* case [256 US 335, 65 L Ed 961, 41 S Ct 501 (1921)] states the appropriate rule. There is no categorical requirement of retreat. Rather, the opportunity to do so safely is only a single factor, to be considered by the triers of fact together with all the circumstances in evaluating the issue of self-defense."

The Court had, long before *Smith*, adopted the rule that "when the accused retired to his own tent, he retreated as far as the law demands." United States v Adams, 5 USCMA 563, 570, 18 CMR 187 (1955). When there is *no* requirement to retreat—being in one's own home—the opportunity to retreat is no longer a factor to be considered. United States v Lincoln, supra.

State v McPhersen, 114 Minn 498, 131 NW 645 (1911), is directly in point. In that case the defendant and the victim occupied the same bunk room aboard ship. Following an altercation between them while ashore, they both returned to the boat. The deceased went to the bunk room and, after eating, the accused followed and went into the room and to his bunk. The only evidence of what followed came from the accused, who claimed that he was attacked and shot the victim in self-defense. Because the jury was instructed that it could consider whether the open bunk room door fur-

**399**

nished an opportunity for the accused to retreat rather than to resort to killing, the Supreme Court of Minnesota reversed the conviction and remanded the case for a new trial.

This interpretation conforms to the rationale behind the retreat rule, that a man has retreated to his safest haven when he is in his own home and need not consider further retreat. United States v Adams, United States v Smith, and United States v Lincoln, all supra. The same principle applies regardless of who attacks him, as ably expressed in State v Phillips, 38 Del 24, 187 Atl 721–722 (1936):

"We can see no more reason why one should retreat from his own house when attacked by a co-tenant or joint occupant than when attacked by a trespasser or intruder. If the house is the home of the person attacked it is his natural place of refuge, and if he is required to retreat therefrom or to flee when attacked by another occupant, the question arises at once, Where shall he flee, and how far shall he flee, and when may he be permitted to return? If he is a lawful occupant, he has the right to remain in the house, *and that right is not lessened or destroyed by the fact that he enjoys his right in common with another or with others.* So where a person lawfully makes his home in a house, having the status of a lawful occupant, and is violently attacked *by another occupant,* in circumstances showing an imminence of death or of great bodily harm, he is no more obliged to retreat or flee from the house than in the case where one in his own house is attacked by an intruder. See Jones v State, 76 Ala 8; Note, 47 ALR 421; People v Tomlins, 213 NY 240, 107

NE 496, Ann Cas 1916C, 916; Watts v State, 177 Ala 24, 59 So 270; 30 CJ 72." [Emphasis supplied.]

The instructions in this case are, at the very least, contradictory on a material issue. In pertinent part, the law officer instructed:

"You are advised that a person is not required to retreat where, being without fault and provoking the assault upon himself, he is at a place where he has a right to be. You are further advised that *a sailor's bunk aboard ship is his home and if he is assaulted and improperly ejected therefrom by a shipmate he is under no duty to remain away from his bunk, but has a right to return thereto at will. However, the evidence tending to show that the accused had an opportunity to retreat safely should be considered by you, together with all of the other circumstances, in deciding the issue of self-defense."* [Emphasis supplied.]

The contradiction is obvious. If one ejected from his home *is under no duty to remain away but has a right to return thereto at will,* how can it be said that having returned, the opportunity to retreat is a factor to be considered in relation to self-defense? The logic of this proposition escapes me. Where instructions on a material issue conflict, with one being prejudicial, the instructions as a whole test do not apply. United States v Noe, 7 USCMA 408, 22 CMR 198 (1956); United States v Skonberg, 10 USCMA 57, 27 CMR 131 (1958). Reversal is required.

Since I believe that the law officer erred to the material prejudice of the accused in his instructions to the court, I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.