UNITED STATES, Appellee

v

ANDREW E. LAKE, Private First Class,
U. S. Army, Appellant

17 USCMA 3, 37 CMR 267

No. 19,742

May 5, 1967

 

*Captain Kenneth J. Stuart* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major David J. Passamaneck.*

*Captain Salvatore A. Romano* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Fort Ord, California, charged with absence without leave and desertion, terminated by apprehension, in violation of Articles 86 and 85, Uniform Code of Military Justice, 10 USC §§ 886 and 885, respectively. He pleaded guilty to absence without leave, in each instance, but was found guilty as charged and sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The convening authority approved the findings and sentence, but reduced the period of confinement to two years. The board of review, with one member dissenting, approved the findings and sentence as correct in law and fact.

We granted review to consider counsel's assertion that:

"THE APPELLANT WAS PREJUDICED BY THE ERRONEOUS ADMISSION INTO EVIDENCE OF HIS PRETRIAL STATEMENT."

We are concerned only with the question of appellant's intent relative to the charge of desertion, since by his plea he admitted his guilt to being absent without leave in both instances. The Government's case consisted solely of a *written* pretrial statement by the appellant and the testimony of a special agent of the Federal Bureau of Investigation. The written statement contains nothing bearing directly on the question of intent. The testimony of the FBI agent, however, is the basis for the present complaint. The agent detailed the circumstances surrounding the arrest of appellant, by himself and another agent, in a rooming house in San Diego, California, on January 3, 1966. In response to his questioning, the agent testified, the appellant readily admitted his identity, and

"... told us that he had been in San Diego for approximately 2 months, having come there from Dallas, Texas, and we asked him if he had been in contact with any members of his family and he replied that he had not. *He also made the statement that he did not intend to surrender to military authorities until he was apprehended by the authorities.*" [Emphasis supplied.]

Additional testimony by the agent related to questioning of Lake as to

4

employment during his absence, the result of a search of his room and his wallet, and transportation of the appellant to the Shore Patrol station in San Diego. The agent also testified that the appellant volunteered the statement that he had left his unit because he was dissatisfied over the fact that other men were coming into his unit and getting promotions with less time than he had. Defense counsel, who did not object to the agent's testimony that appellant did not intend to surrender, limited his cross-examination of the FBI agent to determining that Lake was fully cooperative and that since the agents were searching only for weapons, they might have overlooked any particular pieces of military equipment.

The appellant testified on the merits and affirmed that he had absented himself because of dissatisfaction with his lack of promotion. He denied any intent to remain away permanently and did not recall saying anything to the contrary to the FBI agents. On cross-examination, trial counsel closely questioned the appellant as to his activities and residences while absent, the whereabouts of his military clothing and identification, and whether he had ever told anyone of his military connection or availed himself of numerous opportunities to return to military control. He did not touch upon the testimony of the FBI agent that appellant had stated he did not intend to return until apprehended. He did, however, in argument, call the court members' attention to the testimony of the agent with reference thereto and the fact that the appellant had asserted he did not recall saying anything to the FBI agent after he was apprehended, other than to identify himself.

The staff judge advocate, in his post-trial review, included in his summary of the testimony of the agent that the appellant had told the former he did not intend to surrender to the military authorities until he was apprehended. He also referred to this statement as one of the bases for his determination that there was sufficient evidence to sustain a conviction for desertion. The staff judge advocate recommended a reduction in the period of confinement from three to two years in view of the appellant's youth and the fact that this was his first offense.

Before the board of review, appellate defense counsel alleged that the admission into evidence of the FBI agent's testimony, relative to the statement of the appellant that he did not intend to surrender until he was apprehended by military authorities, was plain error on the ground that while the FBI agent may not have been required to warn the appellant in accordance with Article 31, Uniform Code of Military Justice, 10 USC § 831 (United States v Holder, 10 USCMA 448, 28 CMR 14), he at least should have advised the accused of his absolute right to remain silent.

The board of review, in a split decision, citing United States v Plante, 13 USCMA 266, 32 CMR 266; United States v Holder, supra; United States v Dial, 9 USCMA 700, 26 CMR 480; and United States v Grisham, 4 USCMA 694, 16 CMR 268, affirmed without further comment. The dissenting member, alluding to the fact that the record is silent as to whether the FBI agent, prior to questioning the appellant, gave him an Article 31 warning or otherwise advised him of his privilege against self-incrimination, would hold the evidence inadmissible on the ground there was no affirmative showing that the confession was voluntary, as required by paragraph 140a of the Manual for Courts-Martial, United States, 1951, and no indication that defense counsel expressly consented to the omission of such a showing.

Before this Court, appellate defense counsel, arguing in accordance with the opinion of the dissenting member of the board of review, continued to assert the existence of plain error and contended further that the appellant's pretrial statement was, in effect, coerced by reason of the lack of any warning as to his right to remain silent.

We perceive merit in the opinion of the dissenting board of review member.

Paragraph 140a of the Manual, supra, provides in pertinent part as follows:

"A confession is an acknowledgment of guilt, whereas an admission is a self-incriminatory statement falling short of an acknowledgment of guilt. To be admissible, a confession or admission of the accused must be voluntary. A confession or admission which was obtained through the use of coercion, unlawful influence, or unlawful inducement is not voluntary.

. . . . . .

"The admissibility of a confession of the accused must be established by an affirmative showing that it was voluntary, unless the defense expressly consents to the omission of such a showing, but an admission of the accused may be introduced without such preliminary proof if there is no indication that it was involuntary. If it appears that the confession or admission was not *obtained* from the accused but was made by him spontaneously (without urging, interrogation, or request, for example), the statement may be regarded as voluntary. If it does not so appear and affirmative evidence that the confession or admission was voluntary is required, the statement may not be received in evidence unless it is shown that the making of the statement was not induced by a threat, promise, or use of duress amounting to coercion, unlawful influence, or unlawful inducement. Also, in case the confession or admission was obtained by interrogation or request during an official investigation (formal or informal) in which the accused was a person accused or suspected of the offense, the statement may not be received in evidence, if affirmative evidence that it was voluntary is required, unless it is shown that through preliminary warning of the right against self-incrimination, or—if the statement was not obtained in violation of Article 31b—for some other reason, the accused was aware of his right not to make the statement and understood that it might be used as evidence against him. A showing of the voluntary nature of a confession or admission of the accused may consist of evidence of an oral or written declaration of the accused (itself shown to be voluntary if there is a contrary indication) in which he stated, in substance, that although he had been advised that he did not have to make the confession or admission, and that it might be used as evidence against him, he nevertheless made it freely, without being threatened with punishment or promised a reward."

This provision of the Manual, insofar as it purports to establish a rule of evidence for military tribunals, has the force of law. United States v ·Smith, 13 USCMA 105, 32 CMR 105.

It is obvious from the above that a different rule has been adopted with reference to the admissibility of a confession as differentiated from an admission. The former requires an affirmative showing of voluntariness, absent express waiver by counsel, while the latter is admissible if there is no evidence of involuntariness. In the case at bar, the complained-of statement can only be construed as a confession. United States v Williams, 9 USCMA 3, 25 CMR 265. The statement went directly to the heart of the matter, since the single issue in this case was whether the accused intended to remain away temporarily or permanently. The testimony of the FBI agent removed all doubt.

The responsibility of seeing that a pretrial confession is introduced only after preliminary proof of its voluntariness rests with the prosecution. United States v Smith, 15 USCMA 416, 35 CMR 388. "And it is not enough to say he relied upon the absence of defense objection, for the Manual itself declares 'a waiver of an objection does not operate as a consent if consent is required.' Manual, supra, paragraph 154d; United States v Smith, 13 USCMA 105, 32 CMR 105." (*Ibid.*, at page 417.)

6

The record in this case is totally devoid of any evidence of the required foundation of voluntariness. The agent was not asked whether he gave any manner of warning and he volunteered no such information; nor was it ever established that the appellant was aware of his right not to make a statement or that any statement he made might be used against him. The Government contends that voluntariness is apparent from the fact that the appellant was cooperative with the arresting officers, answered all their questions, and even volunteered the statement that he had left his unit because he was dissatisfied, which statement he also later made to a military investigator following an Article 31 warning. While no one would require adherence to a ritualistic or formalistic method of showing voluntariness, this is hardly enough to satisfy the mandatory requirement. Even the voluntary character of the statement to the agent as to why appellant left the service is suspect, as evidenced by the following portion of the record:

"Q. [Trial Counsel]. Did he make any statement in your presence, sir, to give you an idea why he deserted from the Army?

"A. *We asked him that and—*

"DC: I object to the word—

"LO: The objection is sustained as to the word 'desertion' and the court is instructed to disregard it. That's what they are to determine, whether or not he is a desertor [sic].

"TC: I will rephrase the question.

"*Questions by prosecution (continued):*

"Q. Did he make any statement in your presence as to why he left the service, particularly his unit?

"A. Yes. He volunteered the statement, stating that he was stationed at Fort Sill, Oklahoma, and he was doing his job there. He said he had a good record and he said that there were other men that were coming into his unit and they were getting promotions with less time than he had, and for that reason he was dissatisfied and left his post." [Emphasis supplied.]

We are aware of our previous holdings that civilian law enforcement officers, who are not subject to the Uniform Code of Military Justice, need not give the warning provided in Article 31 (b) to an accused in interrogating or requesting a statement of him where there is nothing to indicate the civilian officer was acting for the military service. United States v Grisham, United States v Dial, United States v Holder, United States v Plante, all supra. See also United States v Smith, 10 USCMA 619, 28 CMR 185; United States v Taylor, 10 USCMA 621, 28 CMR 187; United States v Schlomann, 16 USCMA 414, 37 CMR 34; United States v D'Arco, 16 USCMA 213, 36 CMR 369.

Appellate defense counsel contend that Lake's confession was in the nature of a *coerced* confession since it was obtained without any warning and there is no showing that the appellant was aware of his right to silence.

The Manual rule, paragraph 140a, supra, also provides that a confession or admission obtained through the use of coercion, unlawful influence, or unlawful inducement is not voluntary and hence not admissible. Further, the Manual expresses two such instances as follows:

"During an official investigation (formal or informal) in which the accused is a person accused or suspected of the offense, *obtaining the statement by interrogation or request without giving a preliminary warning of the right against self-incrimination*—except when the accused was aware of that right and the statement was not obtained in violation of Article 31b.

"Obtaining the statement in violation of Article 31."[1] [Emphasis supplied.] [*Ibid.*, at page 249.]

[1] "Art. 31. Compulsory self-incrimination prohibited.

"(a) No person subject to this chap-

The above-quoted examples provide that an unwarned statement is a coerced one and inadmissible under Article 31 (d) of the Code. In explanation of this portion of the Manual, the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at page 216, contains the following:

". . . Since it would appear to be both logically and morally indefensible, from the standpoint of making rules for determining the admissibility of confessions and admissions, to require that the accused or suspect be advised of the right against self-incrimination when he is interrogated or requested to make a statement by persons who are subject to the code, but to dispense entirely, and in every case, with such a requirement when he is interrogated or requested to make a statement by persons (who may be military investigators) who are not subject to the code, the text of the Manual has been so phrased that civilian military investigators not subject to the code, and other investigators not subject to the code who are acting in an official capacity, must give a warning in those cases of interrogation or request in which the accused or suspect is not aware of the right against self-incrimination. It will be noticed that in the case of an interrogation or request by a person who is subject to the code the fact that the person interrogated, or requested to make a statement, may have been well aware of his right not to incriminate himself (an accused lawyer, or [sic] example) is immaterial, and if a statement is obtained from such a person in violation of Article 31*b* it is, by reason of the express provisions of Article 31*d*, inadmissible."

The problem presented by the above-noted explanation of paragraph 140*a* was before us in United States v Grisham, supra. There we held that:

"Properly read, we are sure, paragraph 140*a* of the Manual and its quoted explanatory material do no more than make plain that which is implicit in the Article itself. The 'official investigation' referred to in paragraph 140*a* must be taken to mean not only an *official* inquiry, but as well an official *military* investigation. Thus, as we have seen, if persons not subject to the Code—such as civilian law enforcement authorities—conduct an interrogation or request a statement in furtherance of any military investigation, or in any sense as an instrument of the military, then the duty arises to furnish sound advice concerning the provisions of Article 31. Otherwise they are not required to do so—and their failure will not operate to deprive the court-martial of any statement they may secure." [*Ibid.,* at page 697.]

Initially, it should be pointed out that Grisham was warned under Article 31 by military investigators prior to his statement to the French police, who had primary jurisdiction over the strictly civilian type offense (Grisham was ultimately convicted of the unpremeditated murder of his wife), and his

---

ter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

"(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

"(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

"(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial." [Article 31, Uniform Code of Military Justice, 10 USC § 831.]

statements were characterized as "voluntary in the traditional sense."

Similarly, in *Dial* (robbery), *Plante* (larceny), *D'Acro* (larceny, and *Schlomann* (murder and attempted robbery), civilian-type offenses were involved and there was at least dual jurisdiction between military and civilian authorities. While United States v Smith, 10 USCMA 619, and United States v Taylor, 10 USCMA 621 (both convicted of false pass and absence without leave) were charged and convicted of only military-type offenses, the FBI agent who testified began his investigation initially in connection with alleged violations of Selective Service regulations over which the FBI has primary jurisdiction. His apprehension of these accused was prompted by a tip from a confidential civilian informant that they were in deserter status and not as a result of a request from military authorities.

Only *Holder* is directly in point since it involved only a strictly military offense—desertion. We there noted that, with respect to the type of offense, civilian vis-a-vis military, the previous holdings in *Dial* and *Grisham* dealt with offenses in contravention not only of the Code but of the civilian law as well. Notwithstanding, a majority of this Court, in *Holder,* adopted the rationale of the previous cases on the ground that the services neither directly nor indirectly have any control over or the right to direct the manner in which the FBI apprehends military violators.

*Holder* can be distinguished, however, for in that case the FBI agent testified only as to the events surrounding the apprehension, the establishment of Holder's identity (which he at first denied), and data obtained by questioning of Holder concerning his prior military status and absence. In the case at bar, similar testimony was given by the apprehending FBI agent and no complaint is made thereof for indication of involuntariness. However, in this case, unlike *Holder,* the testimony went further and included a *confession* by the appellant that he did not intend to return until apprehended. This was the crux and the only issue in the case. Trial counsel acknowledged as much for he began his argument to the court by stating, "Gentlemen, the only issue we have to decide here today is whether or not this man at any time during his absence intended never to return to his unit at Fort Sill." As noted above, the rule of admissibility of a confession is different from that for an admission.

Under these circumstances, the evidentiary rule set forth in paragraph *140a* applies and, absent an affirmative showing of voluntariness by the prosecution, not found here, the testimony is inadmissible. United States v Smith, *supra,* 13 USCMA 105.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

As I read the record of trial, it was part of the defense strategy to demonstrate the accused was "fully cooperative" with the Federal agents in order to portray him as basically law abiding, and thereby bolster the defense contention that the accused absented himself to get over his resentment at what he believed were discriminatory promotion practices in his unit. As a result, no objection was interposed to the admission of the accused's pretrial statement. In these circumstances, the defense waived any objection that might have kept the statement out of evidence. United States v Fisher, 4 USCMA 152, 156, 15 CMR 152. I would, therefore, affirm the decision of the board of review.