UNITED STATES, Appellee

v

WARREN W. BOLLONS, Airman First Class, U. S. Air Force, Appellant

17 USCMA 253, 38 CMR 51

No. 20,270

October 27, 1967

*Lieutenant Colonel Carl R. Abrams* argued the cause for Appellant, Accused. With him on the brief were *Colonel Dwight R. Rowland* and *Major Walter G. Fenerty.*

*Lieutenant Colonel Harry O. Hinz* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial at Minot Air Force Base, North Dakota, convicted the accused of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920, and sentenced him to a bad-conduct discharge, reduction in grade, and forfeiture of all pay and allowances. The findings of guilty and the sentence were approved by the convening authority, and affirmed by a board of review. Thereafter, the accused petitioned for further review, and pursuant to Article 67(b)(2), Code, supra, 10 USC § 867, the Acting Judge Advocate General of the Air Force certified the record of trial. The petition and certificate raise substantially the same questions as to the admissibility of certain pretrial statements by the accused to a special agent of the Office of Special Investigations.

To a point, there is no dispute between the parties regarding the facts important to the issues. They agree as to the events of September 8, 1966. Briefly, these are to the effect that Special Agent Thomas Rielly called the accused to the Office of Special Investigations at Minot Air Force Base for questioning; after advice as to his rights in regard to the interrogation, the interview was "broken off" when the accused asked to speak to his attorney. The events of the following afternoon are differently construed, and provide the background for the certificate and the accused's appeal. According to the Government, the accused, with full knowledge of his rights, engaged in an absolutely voluntary conversation with Agent Rielly in which he determined to exercise his rights only "on a selective basis." Oppositely, the accused contends the statements ad-

**254**

mitted in evidence against him were obtained in violation of his right to remain silent, as demarcated in Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, 16 USCMA 629, 37 CMR 249.

At the outset, it is important to determine the character of the second meeting between Agent ■ Rielly and the accused. Agent Rielly testified no "force" was used to keep the accused in the office and at no time during the meeting did the accused express "a desire to leave." However, he admitted the meeting took place at the Office of Special Investigations, to which the accused had come because Rielly had "called him back" to be "reinterviewed." These circumstances indicate the accused was sufficiently deprived of his freedom of action to require the conclusion that he was subjected to a custodial interrogation in which all the procedural protections promulgated in *Miranda* were operative. United States v Tempia, supra, page 636; United States v Burns, 17 USCMA 39, 37 CMR 303.

Rielly testified that, at the beginning of the interview, he identified himself as a special agent of the Office of Special Investigations and advised the accused of the nature of the offenses under investigation. He further informed the accused of his right to remain silent and of his right to an attorney. He asked the accused whether he "wanted to talk to his attorney," and whether he wanted a lawyer "present." The accused indicated "he had talked to his lawyer the day before." A "general conversation" ensued which lasted "a couple of hours, at least."

Certain statements were made by the accused during the conversation. In an out-of-court hearing, defense counsel objected to the admissibility of the statements on the ground the accused had asserted the right not to incriminate himself and thereby imposed upon the agent the "obligation at that time to cease the interrogation"; since the questioning continued, the statements thereafter made were involuntary. Trial counsel argued that the accused did not invoke the right to remain silent until after "these other statements" were made. Although the arguments of counsel emphasized the "sequence" of the statements, the law officer apparently missed the significance of the point. After hearing testimony about the circumstances of the interrogation, he ruled merely that testimony "as to whether or not he [the accused] did not want to incriminate himself" would not be presented to the court, but that the "admissions" which trial counsel wanted to introduce into evidence would be admitted. Nothing in the remarks made by the law officer indicates that he considered whether the "admissions" came before or after the accused's assertion of the right to remain silent, or even whether that matter was material to his ruling. Also, he failed to observe in open court specific limitations he imposed upon his ruling in the out-of-court hearing.

In the out-of-court hearing, trial counsel represented there were two "admissions" to which Agent Rielly would testify. The first was that the accused told him the girl was not a virgin, and the second was that " 'One time couldn't get her pregnant.' "[1] Rielly, in fact, testified before the law officer to just these two remarks. When the law of-

---

[1] In view of our disposition of the case, we need not consider the form in which these admissions were presented to the court-martial. It was as follows:

"Q [Trial Counsel] Did he make any other statements to you of an admission in nature?

"IC This is objected to as indefinite and calling for a conclusion of the witness.

"TC I think the witness is qualified, since he is in the OSI, to make this conclusion or state this opinion.

"LO Restate the question, please.

"TC Yes sir. Did the accused make any other statement to you which could be considered as an admission in regard to the offense of carnal knowledge?

"LO Objection overruled. You may answer the question.

"WITNESS Well, he did state that 'one act couldn't have made her pregnant' and he did state that 'she wasn't a virgin.' "

ficer ruled on their admissibility, he said he would allow these to go to the court members, but "Any other testimony elicited by this witness will not be accepted by the court." However, in open court, and despite a reminder to trial counsel "to phrase his questions to limit the answers to what we have discussed," · the law officer allowed Rielly to testify that the accused also admitted he knew the girl was pregnant and he "could have been the father."

No tape or stenographic record was made of the interrogation. Rielly testified he made a "few notes," but the "specific points" about the admissions "were not down." On cross-examination, he admitted he did not "know for sure," and could not testify "positively," that the accused had said, " 'one act couldn't have made *her* pregnant' " (emphasis supplied), rather than one act " 'couldn't have made a girl pregnant.' " His testimony is also ambiguous on the crucial question of the time sequence between the accused's assertion of the right to remain silent and continuation of the interrogation; so much so that it has been differently construed by the staff judge advocate and the board of review. In the opinion of the staff judge advocate, the accused "elected to stand" upon his right to remain silent, but "In spite of this election . . . the interview continued, resulting in several incriminating admissions." The board of review, however, found nothing "to indicate that accused wished to terminate the interview or to remain silent" as to any questions other than those dealing with the fact of intercourse between the accused and the girl.

Agent Rielly's testimony on the question of the accused's assertion of the right to remain silent is as follow:

"Q [Individual Counsel] . . . But you knew at this time the man had an attorney?

"A Yes ma'am.

"Q But the interrogation continued.

"A Yes ma'am.

"Q Did he tell you then that he did not want to make any statements that could be used against him and did not want to incriminate himself?

"A Yes ma'am.

"Q But the interview continued?

"A Yes ma'am.

. . . . .

"Q [Trial Counsel] At what point in the interview did he say 'I do not want to incriminate myself'?

"A At any time he was asked did he have sexual intercourse with Linda Lozensky he would say 'I don't want to say anything to incriminate myself.'

. . . . .

"Q [Law Officer] Will you please elucidate as to how this statement allegedly stated by Airman Bollons that 'One time couldn't get her pregnant' and 'She wasn't a virgin' came to be stated?

"A The first was all part of . . . He explained he had known her quite some time but only been out with her one time, the Saturday night before Easter Sunday 1966. This is the only time he had been out with her and he made the remark 'One time could not get her pregnant.'

. . . . .

"Q [Law Officer] You say he made the statement he could have been the father?

"A Yes sir.

"Q Was this in answer to a question by yourself?

"A Yes sir.

"Q What was that question?

"A This was all part of a general conversation. Shortly after this point where he said 'One act couldn't have made her pregnant' and we were talking about how he should know better than that, he's old enough, he knows different, and we were discussing the pattern and all this. He was asked if he possibly could have been the father, and he said yes, he could have been the father."

Whether Rielly's testimony requires the conclusion, as the accused contends, that he asserted his right to remain silent prior to any interrogation need not detain us. The burden is on the Gov-

ernment to establish the proper predicate for the admission in evidence of an inculpatory pretrial statement by the accused. United States v Lake, 17 USCMA 3, 37 CMR 267. In our opinion, that burden was not met because it does not convincingly appear that the incriminating statements were made before the accused asserted his right to remain silent. Rielly's testimony leaves no doubt the accused consistently refused to answer when asked a question dealing directly with the offense. The picture that emerges from the record is that of an interrogation in which the agent blended seemingly innocent questions with broadly incriminating ones. The accused recognized the obvious import of the latter and refused to answer them, but it is apparent he either did not understand, or did not appreciate, the incriminating potential of the former. The pattern of his responses spells out a frustration of his effort to assert his right against self-incrimination during the interrogation. In a situation of this kind *Miranda* commands that the interrogation cease.

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in *any* manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." [Emphasis supplied.] [Miranda v Arizona, supra, 384 US 436, 473–474.]

Agent Rielly's testimony indicates the interrogation of the accused did not cease on any of the occasions the accused said he did not "want to make any statements that could be used against him and did not want to incriminate himself." Since his testimony does not clearly and convincingly demonstrate that the incriminating statements were made before the accused's assertions of the right to remain silent, they should not have been admitted in evidence.

We answer in the negative the certified question which asks whether the board of review was "correct in its determination that the law officer did not err in admitting the testimony of Special Agent Rielly as to statements made to him by the accused," and reverse the decision of the board of review. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges FERGUSON and KILDAY concur.