UNITED STATES, Appellee

v

WILLIAM WESTMORE, Sergeant, U. S. Army, Appellant

17 USCMA 406, 38 CMR 204

No. 20,524

February 23, 1968

*Captain Dennis R. Hunt* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Major David J. Passamaneck,* and *Captain Kenneth J. Stuart.*

*Captain Salvatore A. Romano* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Fort Bliss, Texas, charged with four specifications of larceny, two specifications of fraud against the Government, unlawful cohabitation, and three specifications of wrongful use of official documents, in violation of Articles 121, 132, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 932, and 934, respectively. He pleaded not guilty but was found guilty of one specification of fraud against the Government and three specifications of wrongful use of official documents. He was sentenced to bad-conduct discharge, total forfeitures, and confinement at hard labor for two years. The convening authority disapproved the fraud specification and set it aside but affirmed the remaining findings of guilty and the sentence. The board of review affirmed the findings as approved but reduced the confinement to one year.

We granted review to determine whether the law officer erred by failing to instruct the court that the Government has the burden of proving beyond a reasonable doubt that the appellant did not in any manner indicate he did not wish to be interrogated, and that if the Government fails to do so any admissions or confessions from ensuing interrogation are involuntary and may not be considered.

The issue arose from the evidence given at trial. When testifying as to the taking of a pretrial statement from the appellant, a former Criminal Investigations Detachment agent asserted that before questioning Westmore he warned him of his rights according to Article 31 of the Code, supra, 10 USC § 831, and, in addition, of his right to counsel. Specifically, the witness testified:

"A I read Article 31 in its entirety and explained it. I read a prepared excerpt which had been furnished each investigator by the 4th MP Group relative to advising a man of his right to counsel. I read this portion, or that excerpt in its entirety to Sergeant Westmore and I explained it to him.

"Q [TC] Did he give you any indication as to what was his understanding of what you had told him?

"A He indicated to me that he understood.

"Q What did you do after that?

"A I started to ask him questions relative to his being at Fort Sam Houston and having given the ID card and casual payment record to Mr Rodriguez and he denied having given it to Mr Rodriguez."

Contrariwise, the appellant asserted that he was informed only of his rights under Article 31 and asked for a statement with reference to certain documents which the investigator then had in his possession; that he was not informed he was entitled to consult with an attorney at that time or at any other time during the course of the interview; and that at the outset he told the investigator he did not desire to make a statement as he had nothing to do with the matter under inquiry.

The agent denied that the appellant ever asserted he did not wish to make a statement and, in fact, the agent was surprised when he finally did, in view of his "grade, age, experience." He first saw Westmore in the Finance Office at about 11:30 a.m. on October 28, 1966. He gave the warning at about noon while both were in the military police office, and obtained a verbal admission from Westmore at approximately 1:30 p.m. They then went to the CID office where a stenographer

**407**

was obtained. The completed statement (Prosecution Exhibit 13) was signed at about 5:00 p.m.

At one point in the interrogation, the agent testified, he left the room for a short time and when he returned he saw that the appellant was writing something on a tablet. "[H]e handed it to me and I looked at the first two or three lines of it. It started out that he was a victim of circumstances and I handed it back to him and I left the room again." The agent assumed from reading the first few lines that it was a denial but since "I felt I had the right man" he continued his questioning. Defense counsel then inquired:

"Q If he had kept on writing out statements denying the offense, denying any participation, you would have kept plugging away until you got a statement to incriminate, was that your purpose?

"A As long as I felt I had the right man and he agreed to talk to me and I did not violate his rights, yes sir."

With reference to his having written something on a tablet, the appellant testified that when he handed it to the agent, "He looked at it and he threw it to one side and he said 'I am not going to waste your time, don't you waste my time.'"

The voluntariness of the appellant's pretrial statement was initially considered in an out-of-court hearing before the law officer. Based on the testimony and argument of counsel offered there, he ruled that he would admit the statement and that he would instruct the court on its duties and responsibility in this regard at the proper time. The evidence presented to the court members was substantially the same and the law officer overruled defense counsel's objection to its admission. He then, and *again at the close of the trial of the case*, instructed the court as follows:

". . . You are advised that my ruling receiving in evidence the out of court statement of the accused with respect to the offenses alleged in Charge I, Charge II and Additional Charge III, is final only on the question of admissibility. My ruling merely places the statement before the court; it does not conclusively establish the voluntary nature of the statement. Each of you, in your deliberation upon the findings of guilt or innocence, may come to your own conclusion as to the voluntary nature of the statement. You may accept the statement as evidence only *if you determine beyond a reasonable doubt that it was voluntary* as I will define that term to you. If you do not determine that the statement was voluntary, you must reject and disregard it as evidence in this case. You are also advised that any evidence adduced as to the voluntary or involuntary nature of the accused's out of court statement may be considered by you in determining the weight that you will give to the statement.

"You are further advised in this connection that this out of court statement of the accused is not voluntary if it was obtained from the accused through the use of coercion, unlawful influence, or unlawful inducement. You will also consider that it is not voluntary if while he was suspected of the offenses it was obtained from him through the interrogation of a person subject to the Uniform Code of Military Justice, who did not first inform the accused of the nature of the accusation and advise him that he did not have to make any statement regarding the offenses of which he was accused or suspected, and that any statement made by him might be used as evidence against him in a trial by court-martial, and that he had the right to consult and have with him during the interrogation an attorney provided by him or an attorney appointed for him, and further if the statement was taken through interrogation without the presence of counsel that the accused had freely, knowingly, intentionally, and affirmatively waived his right to counsel and to remain silent.

"Coercion, unlawful influence, or unlawful inducement would be present if an accused made an incrim-

inating, out of court statement as a result of a promise of substantial benefit likely to induce a confession from the accused."

Quite properly, the law officer presented the issue of voluntariness as one of fact for the court members to determine beyond a reasonable doubt. He then proceeded to enumerate matters they could consider which, if found, would indicate involuntariness. Included therein were a warning of his right to remain silent, to have advice of counsel, to have the latter present during the interrogation, and, if a statement was taken without the presence of counsel, the court must find that the accused waived his right to counsel and to remain silent.

In the case at bar there was contradictory testimony by the prosecution and the defense as to whether Westmore was given a proper warning with reference to his right to counsel prior to his interrogation. See United States v Tempia, 16 USCMA 629, 37 CMR 249; Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966). It should be noted, however, that Prosecution Exhibit 13, in its preamble, contains the necessary ingredients to satisfy this requirement, at least for that point in time when the appellant signed the pretrial statement. In any event, this issue was presented to the court members under proper instructions requiring a finding of fact that the warning was given prior to the outset of interrogation.

The requirements of *Miranda* (*Tempia*), however, go further than that, for the Supreme Court stated:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; *any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise*. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." [Emphasis supplied.] [*Id.*, 384 US, at pages 473–474.]

Here the record again contains contradictory testimony. The agent claimed that at no time did Westmore ever indicate to him that he did not want to make a statement. Adversely, the appellant asserted that at the outset he informed the agent he "did not desire to make a statement, in fact I had nothing to do with it." Again, when the agent returned with a cup of coffee and asked Westmore whether he wanted to make a statement, the latter declined. During another period of being left alone in the military police office, the appellant wrote out a statement which the agent assumed to be a denial of implication in the matters under investigation, and hence would not consider it. After being taken to the CID office where he was photographed, the appellant testified he once more told the agent "that I did not want to make a statement."

If, in fact, the appellant is correct in his testimony, the statement taken thereafter is *per se* involuntary and may not be used in evidence against him. Miranda v Arizona, supra; cf. United States v Bollons, 17 USCMA 253, 38 CMR 51. At the very least, considering the state of this record, the issue is one of fact which can only be decided by the members of the court under proper instructions. United States v Odenweller, 13 USCMA 71, 32 CMR 71, and cases cited therein.

The Government also contends that in view of the handwritten denial prepared by the appellant, his testimony is, at best, equivocal as to whether he asserted his privilege against self-incrimination and suggests that it raises the question of waiver.

On this precise issue, the Supreme Court, in *Miranda*, discoursed at length:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy

burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v Illinois, 378 US 478, 490, note 14, 12 L ed 2d 977, 986, 84 S Ct 1758. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v Zerbst, 304 US 458, 82 L ed 1461, 58 S Ct 1019, 146 ALR 357 (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

. . . . .

". . . Moreover, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated.

"Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege. Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. *The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation,*"

[Emphasis supplied.] [*Id.*, 384 US, at pages 475–476.]

Like the issue of invocation of the right to remain silent, the question of waiver is a factual conclusion, open to dispute, requiring the scrutiny of the triers of fact. The law officer instructed that the pretrial statement could not be considered if taken without the presence of counsel, unless the court determined that "the accused had freely, knowingly, intentionally, and affirmatively waived his right to counsel and to remain silent." However, without the light of understanding as to the Government's burden to prove waiver, as noted above, the court members were left free to believe that by subsequently giving the statement the appellant had abandoned his right to remain silent. Cf. United States v Acfalle, 12 USCMA 465, 31 CMR 51. The contrary might just as well be true (Miranda v Arizona, supra), especially in view of other testimony by the appellant, not noted herein, that he may have been cajoled and tricked into giving a statement. As we stated in United States v Bollons, supra, at pages 256–257:

". . . The burden is on the Government to establish the proper predicate for the admission in evidence of an inculpatory pretrial statement by the accused. United States v Lake, 17 USCMA 3, 37 CMR 267."

And in United States v Acfalle, supra, at page 470:

". . . When, however, the question involves whether the accused was deprived of his volition to speak or remain silent by the use of measures which, to the military court member, might bear some semblance of legality, the facts before the court-martial must be related to the legal principles involved in such a manner that the members are clearly made aware of the need for their consideration of each such circumstance."

Voluntariness is a factual question and, like all factual questions, must be proved beyond a reasonable doubt; so, too, all the issues which go to the determination of voluntariness. United

States v Jones, 7 USCMA 623, 23 CMR 87; United States v Acfalle and United States v Odenweller, both supra. Waiver of a fundamental right is such an issue. Miranda v Arizona, supra.

We hold, therefore, that the law officer erred by failing to instruct the court that the Government has the burden of proving beyond a reasonable doubt that the appellant did not in any manner indicate he did not wish to be interrogated, and that if the Government fails to do so, any admissions or confessions from ensuing interrogation are involuntary and may not be considered. Since the error involved a substantial right of the appellant, reversal is required. United States v Tempia, supra.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.