**UNITED STATES, Appellee,**

v.

**Paul J. DOHLE, Private First Class, U.S. Army, Appellant.**

**No. 29,880.**

U. S. Court of Military Appeals.

Nov. 14, 1975.

224

Colonel Victor A. DeFiori, Lieutenant Colonel James Kucera, Captain Albert T. Berry, and Captain Preston Wilson were on the pleadings for Appellant, Accused.

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v.

Major Steven M. Werner, Captain Allan A. Toomey, Captain Joel M. Martel, and Captain John F. Schmutz were on the pleadings for Appellee, United States.

## OPINION

FLETCHER, Chief Judge:

Appellant was convicted, contrary to his pleas, of one specification alleging the larceny of 4 M16 rifles and 14 padlocks. We granted his petition for grant of review to consider a ruling of the trial judge admitting into evidence, over defense objection, pretrial statements of the appellant.

On the morning of December 27, 1973, Sergeant Prosser, a unit armorer, discovered that four M16 rifles were missing from the company arms room. Since the appellant had access to the arms room, he was one of the individuals questioned about the missing rifles. Appellant consented to a search of his room. During the subsequent search, the four rifles were found. Appellant was then taken to the orderly room where he was advised of his rights under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, and given a Miranda-Tempia[1] warning. Appellant stated that he wanted a lawyer so no interrogation commenced.

Sergeant Prosser was detailed to guard the appellant while his transfer to confinement was being arranged. Without advising him of his rights, Prosser questioned the appellant about the theft. Appellant stated in response to the questions that he had taken the rifles. It is this admission with which we are concerned.

Prosser testified that the appellant was a good friend at the time in issue. He asked the question of the appellant because he was confused and bewildered as to why anyone would want to take the rifles. Moreover, he did not believe when he asked the question that the appellant had taken the rifles. He stated he was acting in a personal capacity, not professional; he had

Tempia, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

not been directed to question the appellant; and he did not intend to use any admissions against him. Prosser did not communicate the appellant's admission to anyone until he met with the trial counsel just prior to the instant court-martial.

█ Whenever the government attempts to use a pretrial statement of an accused against him in a criminal prosecution, it must establish, even absent an objection, that the statement was voluntary— that it was freely, knowingly, and intelligently given. Where an accused's statements are not volunteered, the government must prove, first, that its agents who obtained the statement advised the accused of his *Miranda-Tempia* right to counsel and his Article 31 right to remain silent, and, second, that the individual waived those rights and consented to the interview. If the person indicates that he wishes to exercise his right to remain silent or to consult with an attorney, there can be no interview. *United States v. DeChamplain,* 22 U.S.C.M.A. 150, 46 C.M.R. 150 (1973); *United States v. Borodzik,* 21 U.S.C.M.A. 95, 44 C.M.R. 149 (1971); *United States v. Barksdale,* 17 U.S.C.M.A. 500, 38 C.M.R. 298 (1968); *United States v. Solomon,* 17 U.S.C.M.A. 262, 38 C.M.R. 60 (1967); *United States v. Bollons,* 17 U.S.C.M.A. 253, 38 C.M.R. 51 (1967). Any statement made after the individual expresses a desire not to be interviewed cannot be other than the product of compulsion, subtle or otherwise. *Miranda v. Arizona, supra; United States v. Bollons, supra.*

While we are concerned with the appellant's request for counsel and its continuing validity at the time of Prosser's inquiries,[2] our decision need not be, and it is not, predicated solely upon this concern. Article 31 of the Code requires that we do more.

Article 31, UCMJ, provides, in material part:

(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

.    .    .    .    .

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

█ Read literally, this Article is broader in application than the Fifth Amendment to the United States Constitution and we have so held. *United States v. Musguire,* 9 U.S. C.M.A. 67, 25 C.M.R. 329 (1958). *See also United States v. Woods,* 22 U.S.C.M.A. 369, 47 C.M.R. 124 (1973). If there is a violation of the Article, any statement acquired, regardless of the voluntariness-compulsion issue of *Miranda,* is inadmissible in evidence at a court-martial against an accused.

Throughout its brief history, this Court has had occasion to consider the applicability of Article 31 in factual situations relevant to the instant case. *United States v. Carlisle,* 22 U.S.C.M.A. 564, 48 C.M.R. 71 (1973); *United States v. Woods, supra; United States v. Harvey,* 21 U.S.C.M.A. 39, 44 C.M.R. 93 (1971); *United States v. McCrary,* 18 U.S.C.M.A. 104, 39 C.M.R. 104 (1969); *United States v. Beck,* 15 U.S.C. M.A. 333, 35 C.M.R. 305 (1965); *United States v. Souder,* 11 U.S.C.M.A. 59, 28 C.M.R. 283 (1959); *United States v. Gibson,* 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954). An examination of these cases will reveal that we have analyzed their facts to determine if the interrogator was acting officially or solely with personal motives. The subjective nature of this inquiry requires a difficult factual determination, both at trial and appellate levels. The determination is of-

2. *United States v. Heslet,* 23 U.S.C.M.A. 88, 48 C.M.R. 596 (1974).

ten made even more difficult by the presence of a questioner's multiple motives.[3]

We are not here concerned with voluntary statements that are made by an accused spontaneously or without prior police action. *Miranda v. Arizona, supra; United States v. Vogel,* 18 U.S.C.M.A. 160, 39 C.M.R. 160 (1969). We are concerned with statements made by an accused or suspect in response to questions by a person, subject to the Code, who is in a position of authority over the accused or suspect. Where the questioner is in a position of authority, we do not believe that an inquiry into his motives ensures that the protections granted an accused or suspect by Article 31 are observed. While the phrase "interrogate, or request any statement from" in Article 31 may imply some degree of officiality in the questioning before Article 31 becomes operative, *United States v. Gibson, supra,* the phrase does not also imply that nonpersonal motives are necessary before the Article becomes applicable. Indeed, in the military setting in which we operate, which depends for its very existence upon superior-subordinate relationships, we must recognize that the position of the questioner, regardless of his motives, may be the moving factor in an accused's or suspect's decision to speak. It is the accused's or suspect's state of mind, then, not the questioner's, that is important.

■ Consequently, we hold that where a person subject to the Code interrogates—questions—or requests a statement from an accused or suspect over whom the questioner has some position of authority of which the accused or suspect is aware, the accused or suspect must be advised in accordance with Article 31.

■ Since each of these factors existed when Prosser questioned the appellant without giving an Article 31 warning, that Article was violated.[4] Appellant's statements to Prosser were inadmissible. The erroneous admission of these statements requires reversal regardless of the sufficiency of the remaining evidence. *United States v. Jordan,* 20 U.S.C.M.A. 614, 44 C.M.R. 44 (1971); *United States v. Wagner,* 18 U.S.C.M.A. 216, 39 C.M.R. 216 (1969).

The admission of the appellant's statements affects the validity of only that part of the findings involving the larceny of the M16 rifles.[5] Therefore, we affirm only so much of the findings as finds that the appellant committed the larceny of 14 padlocks of some value. The case is returned to the Judge Advocate General for resubmission to the U.S. Army Court of Military Review for action not inconsistent with this opinion.

COOK, Judge (concurring in the result):

I concur in the result. *See United States v. Beck,* 15 U.S.C.M.A. 333, 339, 35 C.M.R. 305, 311 (1965).

FERGUSON, Senior Judge (concurring in the result):

I concur in the disposition ordered, but for the reasons discussed in my opinion concurring in the result in *United States v. Seay,* 1 M.J. 201 (1975), I am constrained to decline to concur with the new test the Chief Judge purports to enunciate in his opinion. While, as he claims, it may prove a standard more easily applied than the one it supplants, the underlying considerations it hopes to serve basically are the same as those which gave rise to the "official capacity" test it overrules. However, since it, like the former test, ignores the clear and plain meaning of the statute, I respectfully cannot agree with it.

---

3. See the typically excellent discussion in Moyer, Justice and the Military § 2–206 (1972).

4. Prosser was in a position of authority both as a guard and as a noncommissioned officer.

5. The padlocks were discovered during an inventory of the appellant's belongings after he had been ordered into confinement. Appellant's statements did not concern the padlocks nor lead to their discovery.