UNITED STATES

v.

Airman First Class Nickey A. PIERCE, FR 305–52–1627 8th Munitions Maintenance Squadron Fifth Air Force (PACAF).

ACM S24381.

U. S. Air Force Court of Military Review.

Sentence Adjudged 4 Feb. 1976.

Decided 13 Aug. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major Isaac D. Benkin, USAFR.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

LeTARTE, Chief Judge:

Contrary to his pleas, the accused was convicted of dishonorably failing to maintain sufficient funds in his checking account for payment upon presentment of 15 checks totalling $1200.00, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to be discharged from the service with a bad conduct discharge and to be reduced in grade to airman basic.

Two of appellate defense counsel's assignments of error pertain to alleged deficiencies in the staff judge advocate's post-trial review. We need only discuss one of these wherein counsel assert:

THE STAFF JUDGE ADVOCATE ERRONEOUSLY INVITED THE SUPERVISORY AUTHORITY TO CONSIDER MATTER EXCLUDED FROM THE EVIDENCE.

We agree.

At trial, the military judge advised the members of the court that they could not consider certain evidence of uncharged misconduct that had been revealed by the accused during cross-examination. Subsequently, in his post-trial review, the staff judge advocate advised the reviewing authority that the military judge had erred in rejecting this evidence, that it was admissible for the limited purpose of proving "a plan or design of the accused," and that the reviewing authority could therefore consider this evidence in reaching his decision "on whether the findings were proper."

It is well-established that evidence excluded at trial may not be considered thereafter in approving an accused's guilt. *United States v. Starr*, 23 U.S.C.M.A. 584, 50 C.M.R. 849, 1 M.J. 186 (1975); *United States v. DeLeon*, 5 U.S.C.M.A. 747,

19 C.M.R. 43 (1955); see *United States v. Bethea*, 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973). Therefore, the staff judge advocate erred in instructing the reviewing authority that he could consider the excluded evidence in deciding whether to approve the findings of guilt. Furthermore, under the particular circumstances of this case, the erroneous advice resulted in substantial prejudice to the accused since consideration of the uncharged misconduct evidence may have been an important factor in persuading the reviewing authority to reject the accused's exculpable explanation. *United States v. Kelley*, 7 U.S.C.M.A. 584, 23 C.M.R. 48 (1957).

Ordinarily, we would require a new review and action to eliminate any possibility of harm. However, our resolution of the next error assigned by appellate defense counsel renders such procedure inapplicable in this case. Counsel contend that the:

ADMISSION OF THE ACCUSED'S WRITTEN STATEMENT (PROSECUTION EXHIBIT 20) WITHOUT A PRIOR WARNING WAS PREJUDICIAL ERROR.

During the period from 9 September through 25 September 1975, the accused uttered 15 worthless checks, in a total amount of $1200.00, to the Kunsan Sea Breeze Open Mess, Kunsan Air Base, Korea. On 5 November 1975, Mr. William Moore, civilian day manager of the open mess, whose duties included receiving returned checks and making arrangements with the individual to redeem them, interviewed the accused relative to some of these checks without first advising him of his rights against self-incrimination. After showing the accused several of the checks that had been returned for insufficient funds, Mr. Moore obtained a statement from the accused that he would redeem them not later than 10 November 1975.

On 26 November, Mr. Moore again interviewed the accused concerning several additional unpaid checks that had been returned to the open mess since their first meeting. At this time, the accused signed the following statement (Prosecution Exhibit 20):

I made an arrangement with my parents to deposit $3000 into my checking account. My parents ran into severe financial difficulties that prevented them from depositing the money. I will make restitution to the club for $100 a month by means of MPA.

Before resting, the prosecution did not attempt to introduce this statement into evidence. However, after the accused testified on the merits that he had written to a Mr. Tom Robinson, a family friend, asking him to deposit $3000.00 into the accused's account, the prosecution introduced the accused's prior statement for the purpose of impeaching his testimony.

The defense interposed no objection to the Government's use of this exhibit. Instead, the accused explained that his prior statement was not inconsistent with his testimony because he intended that the arrangements for depositing the requested money be made between Mr. Robinson and his parents. Consequently, he did not intend that this prior statement be interpreted as indicating that he had personally and directly made an agreement with his parents to deposit the money.

■ Based on these circumstances, appellate defense counsel contend that the accused's pretrial statement was inadmissible in the absence of a showing that the accused had first been warned of his rights under Article 31, Code, *supra*, and to counsel. Again, we agree.

■ A false or inconsistent exculpatory statement is admissible against an accused to impeach his credibility or as circumstantial evidence of guilt consciousness. *United States v. Hurt*, 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958); Manual for Courts-Martial, 1969 (Rev.), paragraph 153*b* (2)(*b* ). Nevertheless, the admissibility of such a statement is governed by the same evidentiary rules that pertain to the admissibility of confessions and admissions. *United States v. Lincoln*, 17 U.S.C.M.A. 330, 38 C.M.R. 128 (1967); *United States v. McCauley*, 17 U.S.C.M.A. 81, 37 C.M.R. 345 (1967); *United States v. Kelley*, 7 U.S.C.M.A. 584, 23 C.M.R. 48

(1957). As stated by Mr. Chief Justice Warren in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at pages 476–477, 86 S.Ct. at page 1629:

The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory." If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement.

■ Consequently, unlike the prevalent federal rule,[1] an exculpatory statement cannot be used in a military court-martial for impeachment purposes unless the prosecution has established that the appropriate preliminary warning was given the accused or the defense has *expressly consented* to its introduction. *United States v. Lincoln, United States v. McCauley* and *United States v. Kelley*, all *supra* ; *United States v. Jordan*, 20 U.S.C.M.A. 614, 44 C.M.R. 44 (1971); *United States v. Kaiser*, 19 U.S.C. M.A. 104, 41 C.M.R. 104 (1969); Manual for Courts-Martial, *supra*, paragraph 153*b*(2)(*c* ). And, with respect to the latter consideration, the defense's failure to object to the Government's use of an inadmissible exculpatory statement does not constitute a waiver of the requirement that voluntariness be shown. *United States v. Kaiser, supra* ; *United States v. Keller*, 17 U.S.C. M.A. 507, 38 C.M.R. 305 (1968); *United States v. Lake*, 17 U.S.C.M.A. 3, 37 C.M.R. 267 (1967).

In his post-trial advice to the reviewing authority, the staff judge advocate recognized the incriminatory nature of the accused's exculpatory statement. Nevertheless, he opined that the statement was admissible because it was given to a *civilian* "who was not conducting any investigation with color of officiality" and "the interview was not a custodial interrogation."

■ Under Article 31(b) of the Code, *supra*, the burden of warning a suspect of his rights prior to interrogation is placed only on persons subject to military law. Nevertheless, the military services are not permitted to circumvent the provisions of Article 31(b) simply by having persons not subject to the Code perform their criminal investigations. *United States v. Holder*, 10 U.S.C. M.A. 448, 28 C.M.R. 14 (1959). Accordingly, if a civilian conducts an official inquiry in furtherance of a military investigation, "or in any sense as an instrument of the military, then the duty arises to furnish sound advice concerning the provisions of Article 31." *United States v. Grisham*, 4 U.S.C. M.A. 694, 16 C.M.R. 268 (1954); *United States v. Tellier*, 34 C.M.R. 800 (A.F.B.R. 1964). The ultimate inquiry in every case is whether the individual is acting on behalf of the military service or is motivated solely by personal considerations when he seeks to question one whom he suspects of an offense. *United States v. Beck*, 15 U.S.C. M.A. 333, 35 C.M.R. 305 (1965).

■ In determining whether Mr. Moore was acting "as an instrument of the military," we perceive little distinction between the interviews he conducted and the "informal" counselling session held by the commander in *United States v. Seay*, 24 U.S.C. M.A. 7, 51 C.M.R. 57, 1 M.J. 201 (1975). There, the Court of Military Appeals concluded that the Government's contention that Seay's commander was acting in an unofficial capacity in "counselling" Seay was belied in part by the fact that an Army regulation obligated the commander, at least by implication, to *question* Seay as part of his official duties. And, since the

1. See *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

commander actually sought to question Seay, whom he suspected of a criminal offense, a preliminary warning was required.

Here, too, Mr. Moore was clearly acting in an official capacity. The pertinent provisions of Air Force Regulation 34–3 provide that Nonappropriated Fund Instrumentalities (NAFI's), such as open messes, "are established and supervised as a command function by officers and employees of the Government acting within their official capacity." [2] This regulation also establishes requirements that the NAFI custodian collect dishonored checks, by first permitting the debtor to "voluntarily pay the indebtedness," and that the installation commander be furnished a report "if the debtor does not voluntarily pay the indebtedness." [3] That these requirements relate directly to the duties performed by Mr. Moore is manifest.

We find, therefore, that the admission into evidence of the accused's exculpatory statement without first establishing that he had been properly warned constituted prejudicial error that infected the accused's conviction of the offenses charged regardless of the compelling nature of the other evidence of guilt. *United States v. Kaiser, supra.* Accordingly, the findings of guilty and the sentence are incorrect in law and are hereby set aside.

A rehearing may be ordered.

EARLY, Senior Judge concurs.

FORAY, Judge, absent.

---

2. AFR 34–3, Morale, Welfare and Recreation Basic Responsibilities, Policies and Practices, Volume II, paragraphs 1–5c and 1–6, dated 15 February 1974.

3. AFR 34–3, *supra,* Volume VII, paragraphs 2–6d and 4–8, dated 24 May 1974.