UNITED STATES

v.

**Major Gary L. JONES, 251–72–8205 FR, United States Air Force.**

**ACM 22983.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 30 July 1980.

Decided 30 July 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain G. Michael Lennon.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

## DECISION

KASTL, Judge:

We hold valid, on the facts of this case, a military exchange store detective's questioning of the accused despite the fact that she did not warn him of his rights under Article 31(b), Uniform Code of Military Justice, 10 U.S.C. § 831(b).

In November 1979, Mrs. Louan Channel, a civilian, was employed as a part-time Army and Air Force Exchange Service (AAFES) store detective. Serving with her was Airman Farney, an off-duty security policeman recently hired by the Exchange as a detective for the Christmas season.

Observing the accused shopping in the Exchange, Mrs. Channel suspected him of shoplifting.[1] She confronted him outside the Exchange, identified herself, and asked to see his military identification card. ˙ ·e then asked the accused to speak with her privately at the back of the Exchange about merchandise he might have. The accused, Mrs. Channel, and Airman Farney then walked to the manager's office, where Farney called the Security Police.

Meanwhile, Mrs. Channel asked the accused "if he had any merchandise in his possession for which payment had not been made." The accused responded, "I think you know what I have." She then asked him to place the merchandise he had not paid for on the desk. The accused complied by pulling out various articles—German gift items, Christmas ornaments, and Contac cold capsules—from a brown paper bag he was carrying. Subsequently, he bolted from the office, leaving the bag and its contents.

The accused was tried by a general court-martial consisting of members. Acquitted of two other offenses, he was found guilty of stealing goods of a value between $50.00 and $100.00 and of conduct unbecoming an officer, violations of Articles 121 and 133, U.C.M.J., 10 U.S.C. §§ 921, 933, *supra*. He was sentenced to confinement at hard labor for three months and forfeiture of $500.00 per month for six months.

At the accused's trial, Mrs. Channel indicated that she had suspected the accused of shoplifting but did not advise him of his rights under Article 31(b), U.C.M.J.; she explained that an AAFES directive provided that employees have no power to arrest, apprehend, or give rights advisements under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The case is before us for review pursuant to Article 69, U.C.M.J., 10 U.S.C. § 869.[2]

---

1. Mrs. Channel testified that she saw the accused in the Four Seasons section of the Exchange place an item into a brown paper sack he was carrying. The accused then walked to the giftware section where he picked up several items and carried them in his hands back toward the "Four Seasons" area. When he arrived there, he no longer had the items in his hands. Ten minutes later, Mrs. Channel watched him depart the store, carrying his brown paper bag past an unattended cash register. There was no cash register receipt attached to his bag.

2. Article 69, Uniform Code of Military Justice, authorizes The Judge Advocate General to direct our review of records of conviction by general court-martial not otherwise within our statutory jurisdiction. The direction for review in this case is signed by Major General James Taylor, Jr., as Deputy Judge Advocate General. General Taylor is the first officer to serve in that office, and previously served as the Assistant Judge Advocate General, the predecessor position created by Air Force Regulation 110–23, The Judge Advocate General's Department, dated 26 February 1974. The statute authorizing appointment of the Deputy Judge Advocate General of the Air Force was recently enacted as the Nunn-Warner Act, Pub.L. 96–343. *See*, 94 Stat. 1130–31. It is codified as 10 U.S.C. 8072(d)(1)–(3), and specifies the statutory duties of the Deputy Judge Advocate General:

 (2) When there is a vacancy in the Office of the Judge Advocate General, or during the absence or disability of the Judge Advocate General, the Deputy Judge Advocate General shall perform the duties of the Judge Advocate General until a successor is appointed or the absence or disability ceases.

 Clearly, the statute requires the Deputy Judge Advocate General to perform the statutory duties of The Judge Advocate General during the *vacancy* of that office, or during the *absence* or *disability* of its incumbent. Accordingly, we presume that, in performing a duty reserved to The Judge Advocate General, the Deputy Judge Advocate General acted during the existence of one of the conditions requiring him to perform the duties of The Judge Advocate General. Hence, this case is properly

Our attention is invited to two issues: (1) Were the accused's pretrial statements to Mrs. Channel and the contents of the bag he carried obtained in violation of Article 31(b), U.C.M.J., and (2) was the accused prejudiced by trial counsel's arguments on findings?

I

 Article 31(b) provides that persons subject to the Code must warn before requesting a statement from one suspected of an offense.[3] The Court of Military Appeals consistently has rejected a literal construction of this language. *United States v. Kelley*, 8 M.J. 84, 85 (C.M.A.1979) (summary disposition); *United States v. Seay*, 1 M.J. 201, 205 (C.M.A.1975); Air Force Pamphlet 111–8, Evidence, paragraph 32–2(a), dated 30 November 1973. Furthermore, if a civilian conducts an official inquiry in furtherance of a military investigation or is in any sense an instrument of the military, the duty arises to furnish a sound Article 31 warning. *United States v. Grisham*, 4 U.S. C.M.A. 694, 16 C.M.R. 268, 270–271 (1954); *United States v. Pierce*, 2 M.J. 654, 657 (A.F.C.M.R.1976).

 Various tests have been advanced by the Court of Military Appeals to determine, in similar circumstances, who must warn an individual under Article 31(b). Most recently, the Court has set forth a two-prong approach, evaluating both the official capacity of the questioner and the perception of the subject as to what is occurring. *United States v. Duga*, 10 M.J. 206, 210 (C.M.A.1981).[4]

 We find Mrs. Channel's conduct clearly permissible because the first prong of *Duga* was not met. She was in no sense an instrument of the military or conducting a military investigation. On the contrary, she was acting in a private capacity. Accordingly, she was not required to warn the accused under Article 31(b). *United States v. Cross*, 14 U.S.C.M.A. 660, 34 C.M.R. 440 (1964); *United States v. Aau*, 12 U.S.C.M.A. 332, 30 C.M.R. 332, 337 (1961). *See* Moyer, Justice and the Military § 2–205 (1972). *See also United States v. Cocuzza*, 10 C.M.R. 753 (A.F.B.R.1953).

Our holding here is consistent with *United States v. Pansoy*, 11 M.J. 811 (A.F.C. M.R.1981), a case involving a search under the Fourth Amendment, where we analyzed in some depth the status of an AAFES store detective. We found there that an AAFES employee was not acting to benefit the Government by seizing the items in question. Her main purpose was to protect the Exchange system and safeguard its customers from pilferage, not to ferret out crime for government prosecution. Her authority over the accused was limited to his voluntary cooperation, and she did not appear from the record to have exceeded such authority. In sum, she was a store detective, unrelated to direct law enforcement or representing the commander's punitive or disciplinary power. After considering both military and civilian precedents, we equated her, for purposes of the Fourth Amendment exclusionary rule, with any other store employee, and we held that she was not acting in an official capacity. We believe the case at hand fits within the *Pansoy* rationale as to the unofficial status of the AAFES employee.

---

3. Here, the accused was asked to both make a statement and provide the store detectives with physical evidence. As to the latter, if a suspect is being asked to furnish information, by conduct or by conduct plus words, he clearly is being interrogated. *United States v. Borodzik*, 21 U.S.C.M.A. 95, 44 C.M.R. 149, 151 (1971) and *United States v. Taylor*, 5 U.S.C.M.A. 178, 17 C.M.R. 178, 182 (1954). *See generally*, Air Force Pamphlet 111–8, Military Criminal Law

within our jurisdiction pursuant to Article 69 for review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866.

Evidence, paragraph 32–2(c)(2), dated 1 August 1975.

4. In the past, the Court has suggested a test premised on official capacity. *United States v. Beck*, 15 U.S.C.M.A. 333, 35 C.M.R. 305 (1965). Other times, a "position of authority" test has been utilized. *United States v. Dohle*, 1 M.J. 223 (C.M.A.1975). For difficulties in massing the Court on this matter, see *United States v. Dohle, supra*, at 226 and *United States v. Kelley*, 8 M.J. 84 (C.M.A.1979) (summary disposition).

The accused relies heavily upon *United States v. Pierce, supra.* We find that case distinguishable since the NCO Club manager involved in *Pierce* was deemed to be acting in an official capacity on behalf of the military since he was required to interview the accused as to dishonored checks.

## II

In his rebuttal argument prior to findings, trial counsel stated as follows:

I'm sure you realize that people of good character do in fact, commit crimes. This may be less likely to occur, but the history of this country is replete with examples of individuals of good character who have committed crimes, starting with Benedict Arnold, who was a traitor, including Richard Milhous Nixon, who was a conspirator . . . .

And gentlemen, as recently as yesterday, perhaps you've heard about it on the radio yourself, the attorney general of the State of Illinois was convicted of tax fraud. History does not lie, gentlemen, and the evidence in this case does not lie. The prosecution submits to you that the list of names reflecting those of good character who have been convicted of crimes should be increased by one. The prosecution asks you to add the name of Major Gary L. Jones to that list.

The military judge overruled a defense objection to these remarks.

 The accused's good character had been introduced as a matter in defense. Court members are expected to consider their knowledge of human nature and the ways of the world in arriving at a verdict. We view counsel's comments as a permissible reminder that even persons of previously unblemished character are capable of straying from the law. Such commentary was a proper matter for trial counsel's argument. *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956) and *United States v. Long*, 17 U.S.C.M.A. 323, 38 C.M.R. 121 (1967).

The findings of guilty and the sentence are

AFFIRMED.

POWELL, Senior Judge, and MAHONEY, Judge, concur.