**238**

UNITED STATES, Appellee

v.

Travis W. BRITTON, Specialist, U.S. Army, Appellant

No. 65,690.
CM 8802943.

U.S. Court of Military Appeals.

Argued June 4, 1991.

Decided Sept. 18, 1991.

For Appellant: *Captain Cynthia J. Rapp* (argued); *Colonel Robert B. Kirby* and *Lieutenant Colonel Russell S. Estey* (on brief); *Captain Timothy P. Riley* and *Captain Pamela J. Dominisse.*

For Appellee: *Captain Timothy W. Lucas* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief); *Captain Randy V. Cargill.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

In November and December 1988 appellant was tried at Wiesbaden, Federal Republic of Germany, by a general court-martial composed of officer members. Contrary to his pleas, he was found guilty of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. Appellant was sentenced to a bad-conduct discharge, confinement for 2 years, total forfeitures, and reduction to Private E–1. The convening authority approved the sentence. On May 31, 1990, the Court of Military Review affirmed the findings and sentence in an unpublished opinion.

■ We granted review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE RESULTING FROM A SEARCH OF APPELLANT'S GYMNASIUM LOCKER WHICH WAS CONDUCTED IN VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHTS.

We hold that appellant had no "legitimate" expectation of privacy in the commandeered gymnasium locker, in the sense intended in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). *See Rakas v. Illinois,* 439 U.S. 128, 141 n.9, and 143 n.12, 99 S.Ct. 421, 429 n. 9, and 430 n. 12, 58 L.Ed.2d 387 (1978). Accordingly, the military judge did not err in denying appellant's motion to suppress the fruits of a search of that locker.

The court below set forth the facts surrounding the granted issue as follows:

A Chief Warrant Officer Umfress saw the appellant surreptitiously pick up two radios in the post exchange. Umfress then saw the appellant leave the post exchange furtively. He followed the appellant who eventually entered the post gymnasium. Umfress next saw the appellant just after he heard a locker door shut. *In fact, the appellant was putting the radios in a locker and locking it with his lock. The locker was issued to a petty officer who had never used it in some five months.* Umfress returned to the post exchange and alerted one of its employees of the situation. She went with Umfress to the gymnasium and asked the appellant if he had a receipt for the radios. That question was proper. *United States v. Jones,* 11 MJ 829 (AFCMR 1981). In *United States v. Quillen,* 27 MJ 312, 315 (CMA 1988), the Court upheld such limited, on-the-spot requests to produce a receipt.

The appellant said he had returned the radios to the shelf before leaving the exchange. Umfress and that employee saw the appellant hold a leather key pouch. The military police were called. The appellant was asked without a warning of his rights whether he had a locker there. That too was proper. *United States v. Morris,* 1 MJ 352 (CMA 1976).

Umfress found appellant's keys in an accordion folder on a table in the gymnasium. The appellant had been standing near the table. The police then tried locks on lockers until the fateful locker, appellant's, opened.

Unpub. op. at 1–2 (emphasis added).

The military judge made the following specific findings concerning the searched locker:

I find that the accused had previously displayed an expectation of privacy in that locker by locking that locker with his lock, the key to which was on his key ring and his key pouch.

Had the accused known that this locker was assigned to someone else, I would find that he didn't have much of an expectation to privacy, because as soon as the real owner of the locker found his locker locked up, it's likely that some action would be taken to cut the lock off with bolt cutters or otherwise to get into the locker to find out why the real owner is being denied use of it, and to remove anything belonging to an unauthorized person from it. However, there was evidence that there are day lockers in that locker room and there's no evidence, that I can conclude, that the accused should have known that the locker that he was using was an assigned locker.

Petty Officer Lincoln testified that he had never used the locker, had never secured it, and, therefore, I cannot find, by a preponderance of the evidence, that the accused's expectation of privacy in that locker, when he locked it up using his lock, was unreasonable. However, everything that happened after that refutes that expectation of privacy.

First of all, the accused denied having a locker. Secondly, he abandoned the keys to the locker in a public place, such that anybody that came by and discovered the keys, looking through the keys, would find the two master lock keys, could conclude that maybe one of the lockers in the locker room is operated by one of the keys.

- - -

■ The Fourth Amendment protects persons against a government search of places where they have "a legitimate expectation of privacy." *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990). Such an expectation exists when an actual or subjective expectation of privacy is exhibited by a person in a place and when that expectation is one that society recognizes as reasonable. *Smith v. Maryland,* 442 U.S. at 740–41, 99 S.Ct. at 2580. A preliminary, yet unavoidable, question in this case is whether "society is prepared to recognize as reasonable" appellant's expectation of privacy in someone else's locker simply because he precipitately placed a lock on it. *See generally* 1 W. LaFave, *Search and Seizure* § 2.1(d) at 310–14 (2d ed.1987). *See United States v. Battles,* 25 MJ 58, 60 (CMA 1987); *United States v. Muniz,* 23 MJ 201, 205 (CMA

1987) (Cox., J.). We hold that it is not. *See Rakas v. Illinois, supra.*

The record in this case shows that locker 75 was not rented by appellant or assigned to him by appropriate gymnasium authorities. In addition, it was shown that this locker was assigned to Petty Officer Lincoln, and he did not give appellant permission to use it. Although Petty Officer Lincoln never used this locker or put a lock on it and both assigned and day lockers were in the locker room, appellant's use of this locker was plainly unauthorized and wrongful. Society does not recognize as legitimate a thief's expectation of privacy in another's locker that he wrongfully appropriates to conceal his ill-gotten gains, any more than it recognizes a burglar's expectation of privacy in a house which he is burglarizing. *Rakas v. Illinois, supra. Cf. Minnesota v. Olson, supra* at 1689.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Senior Judge (concurring in the result):

As I read the military judge's findings, quoted in the majority opinion, he determined that Britton initially had a reasonable expectation of privacy in the locker but then, by his subsequent actions, abandoned that expectation. This rationale was accepted by the Court of Military Review and is entirely acceptable to me.

On the other hand, the majority opinion seems to say that Britton lacked any expectation of privacy from the outset, despite his putting a lock on the locker. With respect to appellant's *subjective* expectation of privacy, I consider the finding by the judge to be within his factfinding powers and binding on this Court. With respect to the *reasonableness* of that expectation under the rather confusing circumstances of this case, I am unconvinced that the military judge was wrong.* Therefore, I concur in the result only, on the basis of the rationale expressed by the military judge and adopted by the court below.

* Apparently the court below agreed with his conclusion in this regard.